STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. PAT-
RICK QUINLAN, PLAINTIFF IN ERROR.

Argued November 6, 1913—Decided June 5, 1914.

1. A statute which denounces as a high misdemeanor the act of any
   person who, in public or private, shall by speech, writing, printing
   or by any other mode or means advocate, encourage, justify,
   praise or incite the killing or injuring of any class or body of
   persons or of any individual, is not open to attack for uncertainty.

2. The fact that the statute groups together various means, the use
   of any of which is declared to be criminal when done with the
   purpose denounced by the act, does not render such legislation
   uncertain and void.

3. The solicitation or incitement to the commission of an act which
   is injurious to the public is a misdemeanor under the common
   law.

4. The gravamen of the statutory offence is the incitement or en-
   couragement to the commission of the acts denounced therein and
   not in the actual commission of them.

.5. Where a speaker, at a meeting of employes, on a strike, in ad-
   dressing them, said : "I want you people to go to the mills and I
   want you people to advise the people to join you in this strike.
   If they refuse, I want you to go into the mills and I want you
   to drive them out of the mills. I want you to knock them out of
   the mills, even if it takes your extreme force ;" and the defend-
   ant, immediately after the conclusion of these remarks, said : "I
   make a motion that we go to the silk mills. No matter how we
   get them out, we got to get them out." Held, that the remarks
   made by the speaker were a part of the res gestæ and were ad-
   missible in evidence against the defendant, as tending to show
   that he was participating with the speaker in a common design
   to incite and encourage the injuring of the class of persons re-
   ferred to.

6. Where the prosecution assumed the burden of proving facts and
   circumstances tending to establish the effect of the language on
   the persons addressed, though the sense in which the language
   was used was unequivocal—Held, that even though no such bur-
   den rested on the prosecution, an objection to the introduction of
   such testimony upon the ground of irrelevancy was properly over-
   ruled.

7. Where a witness was called to testify to the reputation of a de-
   fendant, as a law-abiding citizen, and it appeared that the knowl-
   edge of such witness was limited to a period of about two years
   before the finding of the indictment, and there was no offer to
   prove a continuation of such reputation up to the time of the
   finding of the indictment—Held, that the question as to the ad-

mission of such testimony was a matter which called for the exercise of sound judicial discretion, and while a greater latitude is allowed in the admission of evidence to sustain reputation than in admission of evidence to impeach, its exclusion was, nevertheless, not an abuse of sound judicial discretion.

8. *Held*, not to be harmful error to permit a witness, against objection, to be asked on cross-examination, and who had previously testified on such examination, without objection, that she had been engaged in and still was doing picket duty, whether or not she had been arrested for picketing, because having admitted the fact that she was picketing, her arrest therefor could not have affected her credibility to any greater extent than her own admission.

9. Where the witness and defendant were engaged on the same mission, which was involved in the subject-matter of the indictment, it was not error to permit such witness to be asked on cross-examination her views on economic questions, for the purpose of ascertaining her interest or bias, and the extent to which such an examination may proceed rests within the sound discretion of the trial judge.

On error to the Passaic Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and KALISCH.

For the plaintiff in error, *Hunziker & Randall* and *Harry Morelli*.

For the defendant in error, *Michael Dunn*.

The opinion of the court was delivered by

KALISCH, J. The plaintiff in error was convicted in the Passaic County Quarter Sessions Court on an indictment based upon section 5c of the Crimes act (*Comp. Stat., p.* 1744), which provides as follows:

"Any person who shall, in public or private, by speech, writing, printing or by any other mode or means, encourage, justify, praise or incite the unlawful burning, destruction of public or private property or advocate, encourage, justify, praise and incite assaults upon the army of the United States, the national guard, or the police force of this or any other state or any municipality, or the killing or injuring of any

class or body of persons, or of any individual, shall be guilty of a high misdemeanor."

The legality of the judgment pronounced upon this conviction is brought up for review on a strict bill of exceptions and under the one hundred and thirty-sixth section of the Criminal Procedure act.

The essential part of the indictment, the validity of which is attacked by the plaintiff in error, reads as follows: "The said Patrick Quinlan did willfully and unlawfully in public by speech advocate, encourage and incite the said persons so assembled at said meeting to assault, beat and do injury to a certain class and body of persons residing in said city of Paterson, the township of Acquackanonk and the borough of Haledon, who were silk operators employed in said silk mills in said different municipalities, in said county, and who were not on strike; in that the said Patrick Quinlan did then and there utter and speak the following words: 'I make a motion that we go to the silk mills; parade through the streets and club them out of the mills, no matter how we get them out, we got to get them out,' contrary to the form of the statute," &c.

Before the jury was sworn the plaintiff in error moved to quash the indictment upon these grounds—*first,* that the statute under which the indictment is found restrains and abridges liberty of speech in violation of article 1 and section 5 of the state constitution; *second,* that the indictment does not set forth any offence against the statute on which it is based; *third,* that the language set forth in the indictment which is charged to be unlawful does not import the meaning attributed to it or any meaning which is unlawful.

The trial judge refused to quash the indictment and allowed the plaintiff in error an exception to his ruling.

The first ground urged in the court below for quashing the indictment is not mentioned or argued here and was apparently abandoned, and the proposition substituted for it, and argued and urged before us, is that the indictment is ineffective to charge a crime because the statute under which it is framed violates the constitution of this state, in that the

statute is uncertain in describing the offence and therefore void. The argument builded on this head is that since the legislature alone has the power to define what shall constitute a crime it cannot delegate this power to a jury. It is claimed that the legislature has practically delegated its power, in this respect, by leaving to the jury to determine what is meant by "advocate, encourage, justify, praise or incite," &c.

This contention is palpably unsound. A plain reading of the statute makes it manifest that it is not open to the attack leveled against it. There is no organic law or rule of sound public policy that requires the legislature to define the meaning of English words in common and daily use.

Moreover, we think the sense of the statute is clear. It denounces, as a high misdemeanor, the act of any person who, in public or private, shall by speech, writing, printing or by any other mode or means advocate, encourage, justify, praise or incite the killing or injuring of any class or body of persons or of any individual. The legislature has, in express terms, defined what shall constitute an offence under the statute. Counsel of plaintiff in error seem to have wholly misconceived its purport. We are unable to discern anything contained therein which leaves it to a jury, as claimed by the plaintiff in error, to determine what is meant by "advocate," "encourage" or "incite."

This statute, like every other legislative act, is subject to judicial interpretation. When the occasion arises it will become the province of the court to determine what constitutes in law an "incitement," or, as the case may be, under the statute, and for the jury to determine the facts tending to establish a breach of the statute under the law as defined by the court.

The fact that the statute groups together various means by which the end may be accomplished and makes any one of them an offence when done, to attain the object denounced by the act, does not render such statute uncertain and void. Such legislation has received the sanction of a practice extending back to time immemorial, and we need only refer to our Crimes act in which there will be found numerous in-

stances of legislation of this sort from the earliest period in the history of this state, down to the present time, and among which may be mentioned statutes relating to arson, burning, forgery, abortion, &c.

But it is further insisted, by counsel of plaintiff in error, that the indictment fails to charge an offence within the contemplation of the statute. The argument made on this head is that in order to charge a crime within the purview of the statute, the indictment must set out not only the uttering of the words which are alleged to advocate, encourage and incite the injury or killing of the class or body of persons, or of any individual, but also that as a result of such uttering of the words there was a killing or injury of a class or body of persons or of an individual.

This contention is unsound. In *State* v. *Murphy,* 27 *N. J. L.* 112, the defendant was convicted under an indictment charging him with having advised without lawful justification a pregnant woman to take some noxious thing with intent to cause her miscarriage. It was objected that the indictment did not aver that the drug, medicine or noxious thing advised to be taken or swallowed was in fact taken or swallowed by the woman. Chief Justice Green (on *p.* 113), in disposing of the objection, said: "The language of the enactment is: 'If any person maliciously or without lawful justification, with intent to cause and procure the miscarriage of a woman then pregnant with child, shall administer to her, prescribe for her, or advise or direct her to swallow any poison, drug, medicine or noxious thing, * * * such offender shall, on conviction thereof, be adjudged guilty,' &c. The crime of which this defendant is convicted, as defined by the statute, consists in advising, without lawful justification, a pregnant woman to take some noxious thing, with intent to cause her miscarriage. The actual taking or swallowing of the drug, by the terms of the statute, constitutes no element of the crime. The offence charged in the indictment falls clearly within the letter of the statute." It is germane to the matter under discussion to observe here that the section of the Crimes act on which the indictment in the case *sub judice*

is founded, is not an innovation upon but declaratory of the common law.

Stephen, in his *Digest of Criminal Law* (*ed.* 1877) (at *p.* 33), says: "Every one who incites any person to commit any crime, commits a misdemeanor, whether the crime is or is not committed." The author's text is supported by *Rex* v. *Higgins*, 2 *East P. C.* 5, 22; *Rex* v. *Scofield, Cald.* 397; *Rex* v. *Plympton,* 2 *Ld. Raym.* 1378; *Rex* v. *Vaughn,* 4 *Burr.* 2499. In *King* v. *Philipps,* 6 *East,* Lord Ellenborough, in reviewing some of the cases above cited (on *p.* 472), said: "And if the sending of the letter, in the case of King *v.* Vaughn, to solicit a party to commit that misdemeanor were properly held indictable, I am at a loss to see why a letter sent to provoke and excite a person to the commission of the offence in question is not equally so."

The common law doctrine is founded upon the principle that public policy requires that the solicitation or incitement to the commission of an act which is injurious to the public shall be punished as a criminal offence. Thus, in *Regina* v. *Daniel,* 1 *Salk.* 381, where the defendant was indicted for enticing an apprentice from his master and was convicted, judgment was arrested upon the ground "that this was a private injury for which case lies and not in its nature public to maintain an indictment."

In the case of *Regina* v. *Gregory,* 1 *L. R. C. C.* 75, it was held to be a misdemeanor to solicit and incite a servant to steal his master's goods, though no other act was done except the soliciting and inciting. See also *Rex* v. *Smith,* 2 *Doug.* 441; *Regina* v. *Quail,* 4 *F. & F.* 1076.

Enough has been said upon this topic to demonstrate the fallacy of the contention of the plaintiff in error that the indictment does not charge a complete offence because it does not set out that there was a killing or injuring of a class or body of persons or of an individual. But before leaving this topic, it would be well to mention another potent reason against the claim made by the plaintiff in error in this respect. Bearing in mind the conditions under which the statute came into vitality, it lends force to the view that the

legislature had the purpose to make the punishment for encouraging, inciting or advocating murder or assault and battery more drastic than formerly. It raised violations under the act from simple misdemeanors to high misdemeanors.

The framers of the act had evidently in mind the prevention of breaches of the public peace and the protection of human life and limb and deemed that these could be best effected by making it a high misdemeanor for anyone who shall, in public or private, by speech, &c., or by any other mode and means advocate, encourage or incite to such breaches of the law, irrespective of the fact whether such breaches of the law actually took place or not. The gravamen of the statutory offence lies in the incitement or encouragement to the commission of the offences denounced and not in the actual commission of them. The motion to quash therefore was properly denied.

It is further urged before us that the admission of testimony against defendant's objection as to what was said by Elizabeth Gurley Flynn Jones, who was addressing an audience assembled in the hall, immediately preceding the utterance made by the defendant, as set forth in the indictment, was harmful error, necessitating a reversal of the judgment. It appears that several witnesses called by the state were permitted to testify against the defendant's objection, as to remarks made by Mrs. Jones immediately preceding a motion made by the defendant, which motion was as follows: "I make a motion that we go to the silk mills. No matter how we get them out, we got to get them out."

A reference to Mrs. Jones' remarks shows them to have been of an inflammatory character, but the argument made is that they were irrelevant, incompetent and immaterial, because the issue before the court and jury was whether the defendant at that time and place uttered the language charged on the indictment. It is further argued that her remarks were not part of the *res gestæ,* since it was not shown that they were made in furtherance of a common design, or that the defendant was in any way concerned in their making. But this objection is fully answered by the language used by

the defendant when he rounded out the peroration of Mrs. Jones, as described by the state's witness Tracey. Mrs. Jones said: "I want you people to go to the mills and I want you people to advise the people to join you in this strike. If they refuse, I want you to go into the mills and I want you to drive them out of the mills. I want you to knock them out of the mills, even if it takes your extreme force." It was following this that the defendant made the motion in which he used the language set out in the indictment. We think the testimony was properly admitted as a part of the *res gestæ*. It was clearly within the issue, for the defendant was charged with advocating, encouraging and inciting the injuring of a class of persons, and the testimony tended to show that he was participating with Mrs. Jones in a common design to that end.

The validity of the judgment is further assailed upon the ground that it was harmful error for the trial judge to have permitted the state to introduce testimony against the defendant's objection as to what took place at the "Miesch Mill." The "Miesch Mill" was a silk mill. The workmen of that mill were on a strike and strike breakers had taken some of their places. We think the state assumed an unnecessary burden when it undertook to show that as a result of the defendant's utterances the strikers went to the "Miesch Mill" and behaved in a riotous manner. The utterances ascribed to the defendant were unambiguous. The sense in which they were made and used needed no explanation. The defendant's crime was complete when he uttered the words. Although it was unnecessary, under the language used in this case, to show what effect it had on the persons addressed, proof of circumstances or acts showing that it had the effect designed, as expressed by the defendant, cannot be said to be irrelevant.

Another ground relied on by the plaintiff in error for a reversal of the judgment, is the exclusion by the court of testimony of George Gordon Battle, offered by the defendant to prove his reputation as a law-abiding citizen. On the preliminary examination of this witness it appeared that he knew the defendant five or six years; that he did not know where the defendant resided at the time of the trial, but un-

derstood he resided in New York City, and that this was three or four years ago, perhaps two, the witness 'could not exactly tell. The defendant, when on the stand, had previously testified that for the last two years preceding the trial he lived in Jersey City. The question was then put by the defendant's counsel to the witness, as follows: "Now, I ask you again, whether you can say what the general reputation of this defendant is as a law-abiding citizen in the neighborhood' in which he lived at the time you came in frequent contact with him, as you have mentioned?"

It is to be observed that the inquiry is directed not to the reputation of the defendant as a law-abiding citizen in the community in which he had been living for the past two years, but in a community where he had lived two, three or four years ago.

We think, under the circumstances, it became a matter which called for the exercise of sound judicial discretion whether or not to permit the witness to testify as to the reputation of the defendant, as a law-abiding citizen, in New York City two, three or four years ago.

A different situation might have been presented if counsel had offered to show a continuation of such good reputation up to the time of the finding of the indictment. But where there are two or more years immediately preceding the finding of the indictment during which the defendant lived in another community, and no proof is offered as to his reputation as a law-abiding citizen in that community, it then becomes a matter largely within the discretion of the court whether to admit such proof or not. This court, in *Schuster* v. *State*, 62 *N. J. L.* 524, affirmed by the Court of Errors and Appeals in 63 *Id.* 355, said: "The present reputation of a witness is all that is pertinent when he is impeached. Considerable range of time and place is permissible, but how wide a range is largely a matter of discretion with the court."

From the cases where the question has arisen it appears that a greater latitude is allowed in the admission of evidence to sustain reputation than in admission of evidence to impeach it. 3 *Encycl. Ev.* 33, and cases cited in note. But after

a careful examination of the testimony of the witness leading up to the question which was excluded, we cannot say that there was an abuse of discretion by the court in excluding it.

From the record it appears that one Carrie Tarella, a witness sworn in behalf of the defendant, in her cross-examination by the prosecutor of the pleas was asked: "*Q.* Have you been arrested for picketing?" Objection was interposed by counsel of defendant, and in overruling the objection, the trial judge said: "It is a question for the jury to say whether this witness is biased or prejudiced or interested in giving her testimony." The witness then answered the question in the affirmative. The question, undoubtedly, was improper and should have been excluded. But that does not lead to a reversal of the judgment if it also appears that it was neither harmful nor prejudicial to the defendant.

Under section 1 of the Evidence act (2 *Comp. Slat., p.* 2217), a person offered as a witness may only be asked, on cross-examination, if he has been convicted of crime, for the purpose of affecting his credibility. In *Roop* v. *State,* 58 *N. J. L.* 479, where, upon the trial of an indictment for keeping a disorderly house, the defendant was permitted to be asked, upon cross-examination, whether he had not been indicted for keeping a disorderly house at another place, it was held error.

We think, however, that in the case *sub judice* the error was harmless. It is to be observed that the witness Farella had already answered on cross-examination without objection being interposed that she had been picketing, and was still doing it. We are, therefore, unable to perceive how the question whether she had been arrested for picketing, and her answer that she had been three times, was harmful to the defendant. The fact that she had been arrested for picketing did not aggravate the fact that she had been picketing. The fact that she had been picketing for the strikers was a matter to be considered by the jury as to her bias or interest in the case. The bias or interest of the witness rested wholly upon her admission that she had been, and still was, doing picket duty.

The fact that she was arrested for it was wholly imma-

terial. It lent no force to the interest or bias that the witness might have had in the case by reason of her active participation with the strikers as a picket. The trial judge, in his remarks overruling the defendant's objection, evidently referred to the bias or prejudice or interest that the witness might have arising out of the fact that she was a picket. Clearly, it cannot be said that because she said she was arrested for picketing that it affected her credibility in the eyes of the jury to any greater extent than her own admission that she had been, and still was, a picket.

It is further argued that the trial judge erred in permitting the following questions to be asked of and answered by the defendant, on his cross-examination, against his objections: "When you came here did you not advocate the doing away with all wage relations between capital and labor?" The witness answered that he did not. Counsel of defendant have not pointed out to us wherein the court erred, and if so, that the defendant was harmed by such error. The other question was, "I am asking you, wasn't that an event in your life?" The answer was, "Well, it will depend upon the outcome of the strike." The question put related to a matter brought out by the defendant on his direct examination wherein he related his actings and doings and described how he was arrested, &c. The question was proper cross-examination.

Nor do we find any merit in the argument relating to the questions put to Mrs. Jones on cross-examination and which were objected to by defendant's counsel as immaterial and irrelevant.

The witness had been testifying on her cross-examination as to the difference between the principles espoused by the I. W. W. organization and those of the Socialistic Labor party, without objection, and when asked if they, both organizations, were working or representing labor in the uplift of labor or to wipe out the relationship between capital and labor, the question was objected to upon the ground that it was immaterial and irrelevant, which objection, being overruled, the witness answered, "They both claim to be." The witness was then asked: "*Q.* Are they also working for the doing away with

the relationship of the wage earner and master?" This question was objected to upon the additional ground that it was indefinite, and the objection being overruled, the witness replied, "I would prefer that you would specify what you mean by master and wage earner." It appears that the question was not answered and the cross-examination of the witness proceeded without further objection.

It is argued that it was error in compelling the witness to answer regarding her views on economic questions. We think, however, that the mental attitude of a witness, who in this case seems to have been engaged on the same mission with the defendant, was subject to be probed as to her interest or bias. To what extent such an examination may proceed rests within the sound discretion of the trial judge. We do not find that this discretion was abused in this instance. A conclusive answer, however, to the appellant's argument is that if the questions were inmaterial and irrelevant, as the appellant contends, they would form no basis to disturb the judgment unless it further appeared that answers thereto prejudiced the defendant in maintaining his defence on the merits. But this does not appear.

The only other objection presented by the plaintiff in error against the validity of the judgment is that the trial judge committed harmful error in instructing the jury as follows:

"In order to ascertain that you have the right to ask yourselves what did the defendant mean when he said, 'I make a motion that we go to the silk mills, parade through the streets and club them out of the mills, drag them out of the mills.' What did he mean by that? You also have the right to ask yourselves, does such language as that have a tendency to advocate, encourage, justify, praise or incite persons to kill or injure any class or body of persons or an individual."

The argument addressed to us on this head, by the plaintiff in error, is that by this instruction the jury were made to understand that if the language charged had a tendency to do that which is prohibited by statute they might find the defendant guilty.

It must not be overlooked that immediately preceding this

instruction the court was discussing whether the language used by the defendant came within the contemplation of the statute and said: "That is, does the language alleged to have been used by him advocate, encourage, justify, praise or incite the unlawful killing or injuring of any class or body of persons or of any individual."

We think the view taken by the trial judge was more favorable to the defendant than he was entitled to. In order to ascertain in what sense the defendant used the language, it was not improper for the trial judge to say to the jury that they have the right to ask themselves whether such language as that has a tendency to advocate, encourage, &c., persons to kill or injure, &c. For later on in the charge the court said: "If you find that the defendant did use those words, and that the words were such as would advocate, encourage, justify, praise or incite the killing or injuring of any class or body of persons, or of any individual, then it is your duty to convict the defendant, if not, then he should be acquitted."

If the trial judge erred in this respect, it was advantageous to the defendant. The trial judge evidently overlooked the fact that the defendant was charged in the indictment "that he did advocate, encourage and incite," &c., and not also that he did justify and praise. In the sense in which the words "advocate," "encourage" and "incite" are used in the statute, they are cognate terms, and therefore may be used in a single count of an indictment without rendering such indictment subject to the charge of being duplex.

The words "justify" and "praise" were intended to meet other conditions and circumstances. The pleader, very properly in this case, did not use these terms in the indictment. It was not necessary, in order to find the defendant guilty, that the jury should have found that he did advocate, encourage and incite, &c., for if the defendant did any one of them he could be convicted under the indictment. Thus, it is plain that the trial judge put a heavier burden on the state than the law required, which circumstance inured to the defendant's benefit, and of which he cannot be heard to complain.

For the reasons stated judgment will be affirmed.