109 N.J. Super. 382 (1970)
263 A.2d 205
THE STATE OF NEW JERSEY,
v.
ELLA HOPSON, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided February 26, 1970.
*384 Mr. Michael Mitzner, Assistant Prosecutor, for the State (Mr. Leo Kaplowitz, Union County Prosecutor).
Mr. Jack Wysoker for defendant (Mr. Leonard I. Weinglass, attorney).
BARGER, J.S.C.
This is a motion by defendant to dismiss Ind. No. 353, Jan. Sess. 1968 Term. Defendant is charged *385 with offenses in two counts. The first charges her with inciting, in public, an assault upon a police officer of the City of Linden in violation of N.J.S.A. 2A:148-10(b), and the second charges an actual assault and battery upon a police officer in the City of Linden in violation of N.J.S.A. 2A:90-4(a).
For the purposes of the motion, the State's factual contentions are accepted by defendant although the acts and conduct are denied by her in an affidavit.
About September 19, 1968, a demonstration by a substantial number of persons, concerning certain claimed grievances, occurred at the Linden High School, Linden, N.J. Defendant was present at that demonstration and engaged therein. The officer named in the indictment was detailed to duty at the school during the demonstration. During the course of the demonstration defendant's son was placed under arrest by this officer. Thereupon it is alleged by the State that defendant uttered certain words inciting an assault upon the officer by some of those present. The words, among others, being of the general purport of, "Get the cop," and "Free the black boy." Defendant advances three basic contentions on the motion: (1) That defendant's conduct, even if proven, would not support a conviction, and such conviction would violate due process. (2) The statutes are vague and overbroad in their language and not drawn to meet legitmate governmental purposes. (3) The grand jury had no evidence before it and is therefore guilty of misconduct, and the statutes are being unconstitutionally applied to this defendant because of her civil rights activities.
N.J.S. 2A:148-10 reads, in pertinent part, as follows:
"Any person who, in public or private, by speech, writing, printing or otherwise, advocates, encourages, justifies, praises or incites:
b. Assaults upon any of the armed forces of the United States, the national guard, or the police force of this or any other state or of any municipality; or"
*386 The language in the section of the statute with which we are here concerned was construed in State v. Quinlan, 86 N.J.L. 120 (S.Ct. 1914), aff'd, 87 N.J.L. 333 (E. & A. 1914):
The first ground urged in the court below for quashing the indictment is not mentioned or argued here, and was apparently abandoned, and the proposition substituted for it and argued and urged before us is that the indictment is ineffective to charge a crime, because the statute under which it is framed violates the Constitution of this state, in that the statute is uncertain in describing the offense, and therefore void. The argument builded on this head is that, since the Legislature alone has the power to define what shall constitute a crime, it cannot delegate this power to a jury. It is claimed that the Legislature has practically delegated its power, in this respect by leaving to the jury to determine what is meant by "advocate, encourage, justify, praise, or incite," etc.
This contention is palpably unsound. A plain reading of the statute makes it manifest that it is not open to the attack leveled against it. There is no organic law or rule of sound public policy that requires the Legislature to define the meaning of English words in common and daily use.
Moreover, we think the sense of the statute is clear.
It denounces, as a high misdemeanor, the act of any person who, in public or private, shall be speech, writing, printing, or by any other mode or means advocate, encourage, justify, praise, or incite the killing or injuring of any class or body of persons or of any individual. The Legislature has in express terms defined what shall constitute an offense under the statute. Counsel of plaintiff in error seem to have wholly misconceived its purport. We are unable to discern anything contained therein which leaves it to a jury, as claimed by the plaintiff in error, to determine what is meant by "advocate," "encourage," or "incite."
This statute, like every other legislative act, is subject to judicial interpretation. When the occasion arises it will become the province of the court to determine what constitutes in law an "incitement" or as the case may be, under the statute, and for the jury to determine the facts tending to establish a breach of the statute, under the law as defined by the court.
The fact that the statute groups together various means by which the end may be accomplished and makes any one of them an offense when done to attain the object denounced by the act does not render such statute uncertain and void. Such legislation has received the sanction of a practice extending back to time immemorial, and we need only refer to our crimes act in which there will be found numerous instances of legislation of this sort from the earliest period in the history of this state, down to the present time, and among which may be mentioned statutes relating to arson, burning, forgery, abortion, etc.
*387 Section (a) of the same statute was the subject matter of an opinion in State v. Boyd, 86 N.J.L. 75 (S.Ct. 1914), aff'd, 87 N.J.L. 328 (E. & A. 1915), rev'd on other grounds, 87 N.J.L. 560 (E. & A. 1915). In Boyd one of the contentions advanced as to the unconstitutionality of the statute was that it violated the Fourteenth Amendment (due process of the law and equal protection of the laws), the point being that "inciting" to a crime is void as a matter of uncertainty. There the court pointed out that it could not understand how this argument had anything to do with the Amendment referred to, and this court fails to also understand this contention. Constitutional provisions are not designed to interfere with the reasonable exercise of the police power to enact and enforce laws reasonably required to protect such power and the welfare of the people. Adams Newark Theatre Co. v. Newark, 22 N.J. 472, 479-480 (1956), aff'd, 354 U.S. 931, 77 S.Ct. 1395, 1 L.Ed.2d 1533 (1957), reh. den., 355 U.S. 851, 78 S.Ct. 8, 2 L.Ed.2d 61 (1957). If acts denouncing incitement to crime are void, the legal theories and principles behind an accessory before the fact or aiding, abetting or encouraging crime under our statutes would fall and a large part of our criminal law would have to be erased from the books. State v. Boyd, supra, 86 N.J.L. pp. 78-79. The court in Boyd held that the statute did not violate the constitutional rights advanced as contended, including the constitutional right of freedom of speech. Boyd refers to Quinlan and adopts the language of Quinlan in pointing out that the right of freedom of speech is not an absolute right. At common law, incitement to commit a crime was a misdemeanor. State v. Boyd, supra, 86 N.J.L. p. 79. The offense made criminal is the incitement to commit an offense and not the commission of the criminal act itself.
As pointed out in Quinlan, ordinary and common everyday English language is used which can be properly interpreted and defined by the trial court. Whether this defendant understood the language or not is not the test. The *388 test is whether the language is sufficiently clear, definite and certain to be understood by the average person of normal and healthy mind when the issue arose and is not a restriction on constitutional conduct being legally exercised. The Legislature has, in expressed terms, defined what shall constitute an offense under the statute. The words are in daily use. Quinlan held that the words were not uncertain and were not void. State v. Quinlan, supra, 86 N.J.L. p. 123. Many persons are prosecuted under criminal statutes containing equally general standards, and those standards are held to be constitutionally sufficient. Nash v. United States, 229 U.S. 373, 377, 33 S.Ct. 780, 57 L.Ed. 1232, 1235 (1913).
Defendant advanced the argument that the statute does not relate to the incitement of conduct upon an individual, but rather it is directed to such upon the police force as a group. It is true that penal statutes are strictly construed but not to the narrow and strict degree contended by defendant. It is obvious that the framers of the legislation had in mind breaches of the peace and the protection of human life and limb whether of an individual or group. It would be most unusual for a police force as a whole to be involved. The gravamen of the statutory offense lies in the incitement or encouragement of the commission of the offense even though, as pointed out above, there may not be an actual assault. The statute is not a new application of the law, but is declaratory of the common law and directed at certain prohibited conduct which is likely to result in the commission of a criminal offense on police authority. The language has to be read, "assaults upon any of the police force." The court finds no merit in the argument that this applied solely to the group and not to the individuals thereof. Wright v. Vogt, 7 N.J. 1, 6-7 (1951).
The contentions of defendant seem to assume that constitutional and personal rights are absolute. This is not so, and there are many limitations for the protection of other individuals or the public. When the right harms such *389 it may be restricted. Duratron Corp. v. Republic Stuyvesant Corp., et al, 95 N.J. Super. 527, 533 (App. Div. 1967), certif. den., 50 N.J. 404 (1967). The rights of free speech and freedom of the press are still subject to our laws of slander and libel. Under both the Federal and State Constitutions there is a right to assemble, but again, the right is to peaceably assemble and such right cannot be used for the purpose of creating a breach of peace or to subvert the government. N.J. Const. Art. I, para. 18; U.S. Const. Amend. I; State v. Butterworth, 104 N.J.L. 579, 581 (E. & A. 1928); Thomas v. Casey, 121 N.J.L. 185, 187 (S.Ct. 1938), aff'd, 123 N.J.L. 447 (E. & A. 1939).
That the State, in the reasonable exercise of its police power, may provide for punishment of those who abuse freedom of speech by utterances inimical to the public welfare, and tending to corrupt public morale, incite to crime, or disturb the pubic peace, is not open to question. State v. Klapprott, 127 N.J.L. 395, 400 (S.Ct. 1941).
The statutory provisions of N.J.S.A. 2A:90-4 were held to be not so vague and ambiguous as to render this statute unconstitutional in State v. Grant, 102 N.J. Super. 164, 168 (App. Div. 1968), certif. den., 53 N.J. 62 (1968).
At common law it was a misdemeanor for one to incite or to solicit another to commit a misdemeanor or a felony. Such was considered to be prejudicial to the welfare of the community. It goes without saying that to attempt to incite or actually commit an assault upon a police officer is prejudicial to the community and to the administration of law enforcement and criminal justice. State v. Blechman, 135 N.J.L. 99, 101 (S.Ct. 1946). The right to protest does not include a right to disregard statutes reasonably designed to protect the rights of all. State v. Smith, 46 N.J. 510, 521 (1966), cert. den., 385 U.S. 838, 87 S.Ct. 85, 17 L.Ed.2d 71 (1966).
Defendant alleges that there was misconduct on the part of the grand jury, in that there was no evidence before it linking this defendant to any of the conduct complained *390 of; and further, it is her opinion that the indictment resulted from her civil activities. There is no evidential basis for this argument because an eyewitness, being the officer named in the indictment, testified before the grand jury to the conduct of the defendant and to the language alleged. This is adequate evidence to support the indictment. There is no evidence to support the opinion of the defendant that the indictment was returned simply because of her activities in the cause of civil rights. Such activities are not a defense to criminal activity, if properly proven. Inasmuch as the argument is based solely on defendant's belief or opinion, and there is no evidence of improper conduct on the part of the grand jury or any enforcement officer, the argument is totally without merit. State v. Smith, 102 N.J. Super. 325 (Law Div. 1968); State v. Price, 108 N.J. Super. 272 (Law Div. 1970).
Whether the words used actually constituted incitement will depend upon the atmosphere and circumstances disclosed by the evidence. This issue cannot be determined on this motion. It is factual in nature and it is common knowledge that certain words spoken in a certain atmosphere or under certain circumstances may be in jest while in and under others may support a criminal charge and conviction. The conduct and words have to be tested and weighed in the light of the circumstances involved. This can only be determined at trial.
The court is satisfied that the wording of the sections of the statutes with which we are here concerned is not indefinite, uncertain or overbroad and follows the general standards set forth in the cases cited by defendant for such statutory language. The statute is a general restatement of the offense as it existed at common law and which has been a part of the law for a very long period of time. The cases cited by defendant in her brief relate to accepted constitutional rights and standards and the general limitations thereof. The court is satisfied that this statute meets those standards and the accepted limitations of such rights. *391 There appears to be no less drastic means available to protect the rights of the public and law enforcement. The statutes are aimed at preventing breaches of peace and assaults which have long been considered proper subjects for governmental regulation and control.
The court finds the statutes to contain reasonable constitutional limitations on the rights referred to and involved. The motion to dismiss the indictment is denied.