118 N.J. Super. 9 (1971)
285 A.2d 287
STATE OF NEW JERSEY, PLAINTIFF,
v.
ADRIAN CAPPON, DEFENDANT.
Superior Court of New Jersey, Law Division (Criminal).
Decided December 22, 1971.
*11 Mr. Joseph P. Lordi, Prosecutor of Essex County, for State (Mr. Michael A. Petrolle, Assistant Prosecutor, appearing).
Miss Nadine Taub, for defendant (Mr. Stuart Ball, appearing).
MEHLER, J.S.C.
Defendant, who has been indicted for an alleged violation of N.J.S.A. 2A:148-10(b), has moved to declare the statute unconstitutional on its face and to dismiss the indictment as one founded on a void statute. More specifically, he contends that the statute violates the First and Fourteenth Amendments in that it is vague and overbroad.
N.J.S.A. 2A:148-10 provides as follows:
Any person who, in public or private, by speech, writing, printing of otherwise, advocates, encourages, justifies, praises or incites:
a. The unlawful burning or destruction of public or private property; or
b. Assaults upon any of the armed forces of the United States, the national guard, or the police force of this or any other state or of any municipality; or
c. The killing or injuring of any class or body of persons, or of any individual 
Is guilty of a high misdemeanor.
The indictment charges that defendant, or or about July 19, 1970, at the City of Newark, did in public, by speech, advocate or encourage assaults on two named police officers, contrary to N.J.S.A. 2A:148-10(b).
Defendant contends that the statute is void for vagueness because it is susceptible of sweeping and improper application, furnishes a convenient tool for harsh and discriminatory *12 enforcement by local prosecuting officials against particular groups deemed to merit their displeasure, and implicates First Amendment freedoms, since one must guess what conduct or utterances may be punishable. He argues that a vague statute must be declared void because under it the selection of violators will necessarily be arbitrary and based on the personal view of the arresting officer or the philosophy of the court hearing the case and, touching the area of First Amendment activity, a vague statute such as N.J.S.A. 2A:148-10(b), creates a "chilling effect" upon the exercise of First Amendment freedoms by members of the community who oppose the police or their policy.
Defendant's claim of overbreadth is grounded on his view that the statute and indictment sweep far beyond the scope of legitimate governmental regulation into the area of pure speech and thought control. In short, he says that the statute bears the hall mark of a police state. Defendant's final claim is that a statute with all these defects cannot be saved by judicial reconstruction.
Defendant has submitted no statement of facts. It is the position of his counsel that under any conceivable set of facts the statute must be deemed unconstitutional, and that for the purpose of the motion he accepts as true the State's statement of facts. According to a statement provided by the State, the incident out of which the indictment arose occurred during a Puerto Rican Day parade on July 19, 1970, in the vicinity of Newark City Hall. It is contended that as the parade was coming to an end a group of young men who had bottles and bricks at their disposal had reached the area in front of Newark City Hall. Defendant, who was standing among them, began to call to the others in the group, and when he said, "Get those mother fuckers," bricks and bottles began to be hurled at Newark police officers from the area in which defendant was calling, and two police officers were struck by the missiles.
The forerunner of N.J.S.A. 2A:148-10, which was identical in substance with it but slightly dissimilar in form, *13 withstood constitutional attack and was held valid by the old Supreme Court and the Court of Errors and Appeals in State v. Quinlan, 86 N.J.L. 120 (Sup. Ct. 1914), and State v. Boyd, 86 N.J.L. 75 (Sup. Ct. 1914), aff'd o.b. 87 N.J.L. 328 (E. & A. 1915)
In Quinlan, where the indictment charged that defendant, in public, by speech, advocated, encouraged and incited persons to injure nonstrikers, it was argued that the indictment was ineffective to charge a crime because the statute on which it was based violated the State Constitution in that the statute was uncertain in describing the offense and was therefore void. It was also contended that only the Legislature had the power to define what shall constitute an offense; that this power could not be delegated to a jury, and that under the statute it was left to the jury to determine what was meant by the words "advocate, encourage, justify, praise, or incite" etc. In Boyd, where the indictments charged that defendant, by speech, advocated, encouraged and incited strikers to destroy private property by means of sabotage, it was argued that the statute, as construed, was unconstitutional as in conflict with the First, Sixth and Fourteenth Amendments.
Since this court is bound by Quinlan and Boyd, and the arguments for the reversal of these precedents are properly presentable to courts higher than this court, Franco v. Davis, 51 N.J. 237, 238 (1965), it would ordinarily follow that they should be made to those courts and not considered by this court. However, because more than 50 years have passed since Quinlan and Boyd were decided, much has since been written on the matter under consideration and defendant's arguments differ in some respects from those advanced in Quinlan and Boyd, this court does not deem it inappropriate to consider defendant's contentions.
Defendant's position and contentions make it plain that he is seeking a declaration that the statute is vague or overly broad on its face and not as construed and applied to him on the facts of this case. A threshold question which therefore *14 arises is whether defendant may challenge the constitutionality of the statute on its face or whether he is limited to challenging it as construed and applied to him.
Not all speech has First Amendment protection. Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971) (concurring opinion by Douglas, J., 401 U.S. at 74, 91 S.Ct. at 768, 27 L.Ed.2d at 695).
In DeJonge v. Oregon, 299 U.S. 353, 364, 57 S.Ct. 255, 260, 81 L.Ed. 278, 284 (1937), the court, referring to First Amendment rights, said:
These rights may be abused by using speech or press or assembly in order to incite to violence and crime. The people through their Legislatures may protect themselves against that abuse. But the legislative intervention can find constitutional justification only by dealing with the abuse.
In Brandenburg v. Ohio, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969), the court noted that more recent decisions "have fashioned the principle that the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." (395 U.S. at 447, 89 S.Ct. at 1829, 23 L.Ed.2d at 434).
In State v. Smith, 46 N.J. 510, 517 (1966), cert. den. 385 U.S. 838, 87 S.Ct. 85, 17 L.Ed.2d 71 (1966), where defendant disrupted a public meeting of the governing body of the City of Trenton and threatened even greater destruction, the court, saying that there must be order at such meeting, held that it "is frivolous to suggest the First Amendment stands in the way of that imperative."
Boyd held to the same effect as these cases. The court there said:
The fundamental answer to the point raised is that free speech does not mean unbridled license of speech, and that language tending to the violation of the rights of personal security and private *15 property, and toward breaches of the public peace, is an abuse of the right of free speech, for which, by the very constitutional language invoked, the utterer is responsible. Incitement to the commission of a crime is a misdemeanor at common law, whether the crime advocated be actually committed or not. (State v. Quinlan, supra); and this (by the weight of authority) whether the crime advocated be a felony or a misdemeanor (12 Cyc. 182, and cases cited). That the right of free speech is not unlimited is well settled. [86 N.J.L. at 78]
When a defendant raises the issues of vagueness, overbreadth or free speech, there is at times a question of standing. Ordinarily, one to whom application of a statute is constitutional many not claim the rights of others who may be affected by the statute in question. This rule was well stated in United States v. Raines, 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524, 529 (1960). There the Supreme Court reversed a District Court holding that a portion of the 1957 Civil Rights Act was unconstitutional merely on the ground that it was suspectible of application beyond the scope permissible under the Fifteenth Amendment. In so doing the court pointed particularly to the long established rule that
* * * one to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional. [Citing numerous cases]. In Barrows v. Jackson, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586, this Court developed various reasons for this rule. Very significant is the incontrovertible proposition that it `would indeed be undesirable for this Court to consider every conceivable situation which might possibly arise in the application of complex and comprehensive legislation.' Id., 346 U.S. at page 256, 73 S.Ct. at page 1035. The delicate power of pronouncing an Act of Congress unconstitutional is not to be exercised with reference to hypothetical cases thus imagined. The Court further pointed to the fact that a limiting construction could be given to the statute by the court responsible for its construction if an application of doubtful constitutionality were in fact concretely presented. We might add that application of this rule frees the Court not only from unnecessary pronouncement on constitutional issues, but also from premature interpretations of statutes in areas where their constitutional application might be cloudy.
*16 It would appear that the power of a state court to declare a state statute unconstitutional would also be subject to the same limitations.
An exception to the general principles on "standing" exists where the application of these rules would itself have an inhibitory effect on freedom of speech. Raines, at 22, 80 S.Ct. 519. Although at times invoked by the Supreme Court, this exception has been utilized almost exclusively in a restricted manner and has not become a permissible vehicle for wholesale facial attacks on statutes which may impinge upon free speech rights. Instead, in nearly every instance where such facial attacks have been permitted, the court first discussed the statute involved as applied and construed to the facts of the case. The probable reason for this limitation is that any statute, regardless of how narrowly drawn, which affects First Amendment rights, while concurrently protecting legitimate governmental interests, may have a potential chilling effect on those rights. Typically, in those instances where facial attacks have been permitted, the court has noted that the trial court and/or the appellate court failed to construe the statute at all[1] or did so in a manner which left the statute constitutionally unacceptable,[2] *17 or that there are so many vague terms as to render the statute incapable of a rational, constitutional construction,[3] or that there is some other special circumstance which has justified striking down a statute or ordinance on its face.[4]
In recent cases the Supreme Court has indicated that in the absence of special circumstances it will not ordinarily reach out to determine whether statutes are unconstitutional on their face, where the statute has neither been construed nor applied to a particular defendant. The court has pointedly refused to consider, without specific application to the facts, the constitutionality of statutes which were alleged to be vague and overbroad and which were alleged to have a chilling effect on First Amendment rights. See Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968); Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1968); Samuels v. Mackell, supra, *18 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971).
The court dealt extensively with this issue in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). There a federal court injunction had been granted against a pending prosecution and all future prosecutions under California's Criminal Syndicalism Act. The statute was alleged to be vague and overbroad and to create a chilling effect on First Amendment rights. The order granting the injunction was reversed on several related grounds. Unlike Dombrowski v. Pfister, supra, 380 U.S. 479, 85 S. Ct. 1116, 14 L.Ed.2d 22 (1965), relied on by defendant, in which pending and future prosecutions under Louisiana's Subversive Activities and Communist Control Law were enjoined because of the chilling effect created by the special circumstances of bad faith prosecutions and harassment by the prosecutor, in Younger there were no such facts or finding. Instead, said the court (401 U.S. at 49, 91 S.Ct. at 753, 27 L.Ed.2d at 678), "the injury [or chilling effect] that Harris faces is solely `that incidental to every criminal proceeding brought lawfully and in good faith.'" Continuing, the court said further:
* * * [T]he existence of a `chilling effect,' even in the area of First Amendment rights, has never been considered a sufficient basis, in and of itself, for prohibiting state action. Where a statute does not directly abridge free speech, but  while regulating a subject within the State's power  tends to have the incidental effect of inhibiting First Amendment rights, it is well settled that the statute can be upheld if the effect on speech is minor in relation to the need for control of the conduct and the lack of alternative means for doing so. [Citations omitted]. Just as the incidental `chilling effect' of such statutes does not automatically render them unconstitutional, so the chilling effect that admittedly can result from the very existence of certain laws on the statute books does not in itself justify prohibiting the State from carrying out the important and necessary task of enforcing these laws against socially harmful conduct that the State believes in good faith to be punishable under its laws and the Constitution. [401 U.S. at 51, 91 S.Ct. at 754, 27 L.Ed.2d at 679]
*19 The court's obvious concern with the application and construction of statutes in the state courts indicates that this is relevant to the issue of whether the constitutionality of a statute, even one affecting First Amendment rights, ought to be reached without considering its application to a concrete set of facts. In each of the four reported cases involving N.J.S.A. 2A:148-10(b) or its forerunner, L. 1908, c. 278, § 1, the indictment arose in a context which involved incitement to imminent lawless action.[5]
Brandenburg, supra, upon which defendant relies directly for the proposition that a state may not punish "advocacy," provides a useful contrast to the instant case. There defendant was convicted under a statute which prohibited "advocat[ing] * * * the duty, necessity, or propriety of crime, sabotage, violence, or unlawful methods of terrorism as a means of accomplishing industrial or political reform." The charge arose out of a Ku Klux Klan meeting at which highly derogatory, politically oriented remarks were directed towards black and Jewish people in general. No blacks or Jews were at the meeting or in the immediate vicinity. No evidence was produced to show that the words were used as an attempt to instigate or incite a lawless action. "Neither the indictment nor the trial judge's instructions to the jury in any way refined the statute's bald definition of the crime in terms of mere advocacy not distinguished from incitement to imminent lawless action," 395 U.S. at 448, 89 S.Ct. at 1830 and "no construction of the statute by the Ohio courts has brought it within constitutionally permissible limits," Id. at 449, n. 3, 89 S.Ct. at 1830. Hence, the statute was held unconstitutional for overbreadth because "by its own words and as applied [it] purports to punish mere advocacy." Id. at 449, 89 S.Ct. at 1830.
*20 Furthermore, the court made it clear in Younger that a narrowing construction of a potentially vague and overbroad statute is permissible.
In the standing cases we allowed attacks on overly broad or vague statutes in the absence of any showing that the defendant's conduct could not be regulated by some properly drawn statute. But in each of these cases the statute was not merely vague or overly broad `on its face'; the statute [was] held to be vague or overly broad as construed and applied to a particular defendant in a particular case. If the statute had been too vague as written but sufficiently narrow as applied, prosecutions and convictions under it would ordinarily have been permissible. [401 U.S. at 47, 91 S.Ct. at 752, 27 L.Ed.2d at 677, n. 4 (emphasis supplied)]
The court further stated that
* * * in Dombrowski itself the Court carefully reaffirmed the principle that even in the direct prosecution in the State's own courts, a valid narrowing construction can be applied to conduct occurring prior to the date when the narrowing construction was made, in the absence of fair warning problems. [401 U.S. at 51, 91 S.Ct. at 754, 27 L.Ed.2d at 679]
As has been seen, the State, without running afoul of the First Amendment, has the right to punish one whose advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action. N.J.S.A. 2A:148-10 is directed at such persons. Whether the words or conduct of a defendant fall within the ambit of the proscribed conduct must necessarily depend on what was said or done by him and in what context. As the court said in Quinlan, supra, concerning the predecessor of the foregoing statute:
This statute, like every other legislative act, is subject to judicial interpretation. When the occasion arises it will become the province of the court to determine what constitutes in law an `incitement' or as the case may be, under the statute, and for the jury to determine the facts tending to establish a breach of the statute, under the law as defined by the court. [86 N.J.L. at 123]
*21 What was said then is as valid now as it was then. See Brandenburg, supra; Raines, supra; Dennis v. United States, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed.2d 1137 (1951); Yates v. United States, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957). See also Turner v. LaBelle, 251 F. Supp. 443 (D.C. Conn. 1966), wherein the constitutionality of a virtually identical statute was upheld.
Even though the indictment here charges the defendant with advocating or encouraging assaults on named police officers, it should be noted that in the context of the State's assertions, the advocacy is not that of a mere abstract doctrine but of action to assault police officers which could and should readily be covered by adequate and pertinent instructions to the jury. See Yates v. United States, supra, where the court overturned convictions because the trial judge's instructions had allowed conviction for mere advocacy unrelated to its tendency to produce forcible action.
A court may not lightly undertake to declare a statute unconstitutional, nor should it consider doing so, where the attack is mounted by one as to whom the statute may readily be held to be constitutional.
The power and duty of the judiciary to declare laws unconstitutional is in the final analysis derived from its responsibility for resolving concrete disputes brought before the courts for decision; * * * the task of analyzing a proposed statute, pinpointing its deficiencies, and requiring correction of these deficiencies before the statute is put into effect, is rarely if ever an appropriate task for the judiciary. [Younger v. Harris, supra, 401 U.S. at 52, 91 S.Ct. at 754, 27 L.Ed.2d at 680.]
The motion of the defendant is denied.
NOTES
[1] E.g., Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940) (indictment and charge in terms virtually identical to blanket industrial anti-picketing statute); Brandenburg v. Ohio, 395 U.S. 444, 449, n. 3, 89 S.Ct. 1827, 1830, n. 3, 23 L.Ed.2d 430, 435, n. 3 (1969) ("No construction of the [criminal syndicalism] statute by the Ohio courts has brought it within constitutionally permissible limits.")
[2] E.g., Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959) (ordinance prohibiting sale of obscene materials construed without a requirement of scienter); N.A.A.C.P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed. 2d 405 (1963) (statute prohibiting improper solicitation of legal business was improperly applied to civil rights group); Cramp v. Board of Public Instruction, 368 U.S. 278, 285, 82 S.Ct. 275, 7 L.Ed.2d 285, 291 (1961) (loyalty oath was held too vague as construed.); Cox v. Louisiana, 379 U.S. 536, 545, 85 S.Ct. 453, 463, 13 L.Ed.2d 471, 478 (1965) (breach of peace statute construed to apply to peaceful civil rights picketing. "A statute which upon its face, and as authoritatively construed, is so vague and indefinite as to permit the punishment of the fair use of this opportunity [for free political discussion] is repugnant to the guaranty of liberty contained in the Fourteenth Amendment."); Coates v. Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971) (ordinance prohibiting three or more persons assembling and conducting themselves in annoying manner was held vague and overbroad as construed). Cf. Ashton v. Kentucky, 384 U.S. 195, 86 S.Ct. 1407, 16 L.Ed.2d 469 (1966) (criminal libel statute construed too broadly at trial. Although the conviction was reversed, a limiting construction in the state courts eliminated the unconstitutional features and saved the statute).
[3] E.g., Baggett v. Bullitt, 377 U.S. 360, 372, 84 S.Ct. 1316, 1322, 12 L.Ed.2d 377, 385 (1964) (the court there said that "indulging every presumption of a narrow construction of the provisions of the 1931 [loyalty] oath, consistent, however, with a proper respect for the English language, we cannot say that this oath provides an ascertainable standard of conduct or that it does not require more than a State may command under the guarantees of the First and Fourteenth Amendments.")
[4] E.g., Dombroski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d (1965) (harassment and bad faith prosecutions showed special circumstances); Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967) (teacher loyalty oath found vague and overbroad without awaiting a state court construction, where those challenging the oath would have faced complex administrative machinery and loss of jobs in the attempt to get a case into the state judicial system).
[5] State v. Boyd, supra, 86 N.J.L. 75 (Sup. Ct. 1914), aff'd 87 N.J.L. 328 (E. & A. 1915); State v. Quinlan, supra, 86 N.J.L. 120 (Sup. Ct. 1914), aff'd 87 N.J.L. 333 (E. & A. 1915); State v. Hopson, 109 N.J. Super. 382 (Law Div. 1970); State v. Cooper, 113 N.J. Super. 34 (App. Div. 1971).