STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. ELLA HOPSON, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 20, 1972—Decided April 28, 1972.

Before Judges COLLESTER, MINTZ and LYNCH.

Mr. *Edward Carl Broege* argued the cause for appellant (*Messrs. Broege, Fogel & Weinglass,* attorneys).

Mr. *Elson P. Kendall,* Assistant Prosecutor, argued the cause for respondent (*Mr. Karl Asch,* Union County Prosecutor, attorney).

Statement in lieu of brief submitted by *Mr. Michael R. Perle,* Deputy Attorney General, for the State of New Jersey, intervenor (*Mr. George F. Kugler, Jr.,* Attorney General of New Jersey, attorney).

PER CURIAM. Defendant was indicted on two counts: (1) in public, inciting an assault upon Albert Carhart, a municipal officer of the City of Linden, while in uniform, contrary to *N. J. S. A.* 2A:148–10(b), and (2) assault and battery upon said officer while acting in the performance of his duties, contrary to *N. J. S. A.* 2A:90–4(a).

Defendant's motion for dismissal of the indictment was denied in an opinion reported in 109 *N. J. Super.* 382 (Law Div. 1970).

Defendant was tried to a jury and found not guilty of the assault and battery charge. The jury failed to reach a verdict on the "inciting count." After a second jury trial in November 1970, defendant was found guilty of inciting an assault, in violation of *N. J. S. A.* 2A:148–10(b).

The State's evidence was to the effect that on September 19, 1968 a demonstration of a substantial number of persons occurred at Linden High School. Lt. Albert J. Carhart, of the city police department, was assigned to photograph student disorders. According to Carhart, a black youngster kicked Carhart, whereupon he grabbed the boy and arrested him. As he did so, a woman whom Carhart did not know but whom he identified as defendant yelled "Free the black boy. Don't let him lock him up. Get the cop, get the cop." A number of black youths surrounded

Carhart, grabbed at him, and he was forced to release the boy.

Defendant testified to an entirely different version. Admittedly present at the high school, she denied being in the vicinity of the kicking incident and denied using the language attributed to her. Several witnesses corroborated her testimony.

On appeal defendant challenges the constitutionality of *N. J. S. A.* 2A:148–10. She further contends that assuming it could permissibly do so, the trial court's charge to the jury did not cure the facial defects in the cited statute. *N. J. S. A.* 2A:148–10 provides that:

Any person who, in public or private, by speech, writing, printing of otherwise, advocates, encourages, justifies, praises or incides:

a. The unlawful burning or destruction of public or private property; or

b. Assaults upon any of the armed forces of the United States, the national guard, or the police force of this or any other state or of any municipality; or

c. The killing or injuring of any class or body of persons, or of any individual. —

Is guilty of a high misdemeanor.

Initially, defendant argues that the trial court erred when it held the statute in question to be facially constitutional. Defendant relies upon *Brandenburg v. Ohio,* 395 *U. S.* 444, 89 S. Ct. 1827, 23 L. Ed. 2d 430 (1969), which stands for the proposition that a state may not punish for mere "advocacy" except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action. A statute which fails to draw this distinction impermissibly intrudes upon First and Fourteenth Amendment rights. Significantly, there had been no construction of the statute by the Ohio courts that would bring it within constitutionally permissible limits. Hence, as observed in *State v. Cappon,* 118 *N. J. Super.* 9, 19 (Law Div. 1971), the Ohio statute in *Brandenburg* was held unconstitutional " 'by its own words and as applied [it] purports to punish mere advocacy.' "

The predecessor statute to *N. J. S. A.* 2A:148-10 was similar in substance. It was adjudged constitutional in *State v. Quinlan,* 86 *N. J. L.* 120 (Sup. Ct. 1914), aff'd o. b. 87 *N. J. L.* 333 (E. & A. 1915), and *State v. Boyd,* 86 *N. J. L.* 75 (Sup. Ct. 1914), aff'd o.b. 87 *N. J. L.* 328 (E. & A. 1915). In *Quinlan* the indictment charged that defendant in public by speech advocated, encouraged and incited persons to injure non-strikers, *i. e.* " 'I make a motion that we go to the silk mills; parade through the streets and *club them out of the mills,* no matter how we get them out, we got to get them out,' * * *." 86 *N. J. L.* at 122 (emphasis supplied). Similarly, the indictment in *Boyd* charged that defendant, by speech, advocated, encouraged and incited strikers to destroy private property by means of sabotage.

Ordinarily, as observed in *State v. Cappon, supra,* 118 *N. J. Super.* at 13, the ruling in *Boyd* would preclude this court from passing upon the constitutionality of the statute in question. See also, *State v. New Jersey National Bank & Trust Co.,* 117 *N. J. Super.* 38, 48 (Ch. Div. 1971). However, in the more than 50 intervening years there have been several decisions challenging the constitutionality of statutes similar to the statute here under attack. Additionally, defendant's contentions are broader than those urged in the earlier cases. Under these circumstances we deem it appropriate to consider the constitutional challenge to *N. J. S. A.* 2A:148-10.

■ Defendant contends that *N. J. S. A.* 2A:148-10 is (a) facially unconstitutional; (b) unconstitutional because it lacks the necessary element of intent; (c) unconstitutionally vague, and (d) suffers from the unconstitutional vice of overbreadth.

■ We start with the premise that every effort should be made to uphold a statute and every presumption indulged in favor of its validity. *United States v. Harriss,* 347 *U. S.* 612, 618, 74 S. Ct. 808, 98 L. Ed. 989 (1954); *State v.*

*Profaci,* 56 *N. J.* 346, 349 (1970) ; *State v. Klapprott,* 127 *N. J. L.* 395, 399 (Sup. Ct. 1941).

Significantly, we have not been referred to a single case where there has been a prosecution under *N. J. S. A.* 2A:148–10 or its predecessor statute where the gravamen of the charge was other than incitement to imminent lawless action. The decisional law in this State pertains only to such factual situations. *State v. Boyd, supra; State v. Quinlan, supra; State v. Cooper,* 113 *N. J. Super.* 34 (App. Div. 1971). Implicitly, at least, in the cases to which we have alluded, our courts have afforded a narrowing construction to *N. J. S. A.* 2A:148–10 and its predecessor statute. Its applicability has been limited to persons who, in public or private, by speech, writing or otherwise, incite: (a) unlawful burning or destruction of property, or (b) assaults upon the armed forces of the United States, the national guard, or the police force of this or any other state or of any municipality.

· We are mindful that the statute refers to a person "who advocates, encourages, justifies, praises or incites" assaults upon our armed forces, national guard and police forces. However, the statute, when read in context although not so expressly articulated, actually proscribes considerably more than mere advocacy or encouragement. Its implicit constitutional purpose is to render unlawful intentional conduct by any person who incites assaults upon our armed forces, national guard and respective police forces.

■ True, no one should be held criminally responsible for conduct he could not reasonably understand to be proscribed. Yet, a statute will not be struck down as vague, even though marginal cases could be put where doubts might arise. If a general class of offenses can be made constitutionally definite by a reasonable construction of the statute, the court is under a duty to give the statute that construction. *United States v. Harriss, supra,* 347 *U. S.* at 612, 618, 74 S. Ct. 808 (1954).

As already noted, defendant was specifically charged in the indictment with inciting an assault upon a police officer under a statute which has heretofore implicitly been narrowly construed to this effect. The unlawfulness of such conduct is beyond question. "Intent" is, of course, a necessary ingredient of the crime, and is read into the statute. *Cf. State v. Profaci,* 56 *N. J.* at 353.

Subsequent to oral argument our attention was directed to the recent United States Supreme Court decisions in *Gooding v Wilson,* 405 *U. S.* 518, 92 S. Ct. 1103, 31 L. Ed. 2d 408, decided March 23, 1972, and *Papachristou v. City of Jacksonville,* 405 *U. S.* 156, 92 S. Ct. 839, 31 L. Ed. 2d 110, decided February 24, 1972. We regard *Papachristou* as completely inapposite. In *Gooding* a Georgia statute which provides that any person without provocation uses in another person's presence " 'opprobrious words or abusive language, tending to cause a breach of the peace * * * shall be guilty of a misdemeanor,' " was held unconstitutional. The court there said the statute could withstand attack upon its facial constitutionality only if, as authoritatively construed by the Georgia courts, it is not susceptible of application to speech, although vulgar or offensive, that is protected by the First and Fourteenth Amendments. Since the Georgia appellate courts had not construed the statute so as to avoid all constitutional difficulties, the statute was declared unconstitutional. However, the court in the course of its opinion stated that

It matters not that the words appellee used might have been constitutionally prohibited under a narrowly and precisely drawn statute. At least when statutes regulate or proscribe speech and when *"no readily apparent construction suggests itself as a vehicle for rehabilitating the statutes in a single prosecution,"* *Dombrowski v. Pfister,* 380 *U. S.* 479, 491, 85 S. Ct. 1116, 14 L. Ed. 2d 22 (1965), the transcendent value to all society of constitutionally protected expression is deemed to justify allowing "attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity," * * *. [Emphasis supplied]

Significantly, in the cited case of *Dombrowski v. Pfister,* the court reaffirmed the principle that even in a direct prosecution in the state's own courts, a valid narrowing construction can be applied to conduct occurring *prior* to the date when the narrowing construction was made in the absence of fair warning problems. Such problems are not present in the instant case. *Cf. State v. Profaci, supra,* where an acceptable limiting statutory construction was applied to the defendant's prior conduct allegedly in violation of *N. J. S. A.* 2A:170-29.

In passing we note that defense counsel, in opening his summation, told the jury:

What you have to decide is whether this charge, that Ella Hopson on September 19th, 1968, incited an assault on Officer Carhart, by yelling, as they have testified, "Free the black boy, let the black boy go." That's what you have to decide and that's the framework within which I ask you to do your job.

Additionally, a reading of the trial judge's charge in its entirety indicates that he stressed a factual finding "of inciting" and "criminal intent" to commit the offense as requisites to a finding of guilty. No objection was taken by defendant to the judge's charge.

We adjudicate *N. J. S. A.* 2A:148-10 to be constitutional and affirm the conviction.