## STATE OF CONNECTICUT *v.* SCOTT LEARY

SUPERIOR COURT     JUDICIAL DISTRICT OF     FILE No. 368980A
                DANBURY

Memorandum filed September 27, 1989

*Walter D. Flanagan,* state's attorney, for the state.

*Michael K. Courtney,* assistant public defender, for the defendant.

MOTTOLESE, J. The defendant was arrested pursuant to a warrant charging him with inciting injury to persons or property in violation of General Statutes § 53a-179a[1] and conspiracy to commit arson in the third degree in violation of General Statutes § 53a-113.[2] The

---

[1] General Statutes § 53a-179a provides: "INCITING INJURY TO PERSONS OR PROPERTY: CLASS C FELONY. (a) A person is guilty of inciting injury to persons or property when, in public or private, orally, in writing, in printing or in any other manner, he advocates, encourages, justifies, praises, incites or solicits the unlawful burning, injury to or destruction of any public or private property or advocates, encourages, justifies, praises, incites or solicits any assault upon any organization of the armed forces of the United States, as defined by section 27-103, or of this state, as defined by section 27-2, or the police force of this or any other state or upon any officer or member thereof or the organized police or fire departments of any municipality or any officer or member thereof, or the killing or injuring of any class or body of persons, or of any individual.

"(b) Inciting injury to persons or property is a class C felony."

[2] General Statutes § 53a-113 provides: "ARSON IN THE THIRD DEGREE: CLASS C FELONY. (a) A person is guilty of arson in the third degree if he

affidavit accompanying the warrant contains a verbatim transcript of a telephone conversation between the defendant and Ronald G. Tolmoff. The call was initiated by Tolmoff to inquire whether the defendant was interested in having Tolmoff make a pipe bomb or bombs that he proposed to use to damage a certain police officer's police car. The officer had been involved in the defendant's prior arrest for sexual assault. This conversation was held two days after a casual meeting between the defendant and Tolmoff's younger brother at which the defendant stated that he wanted to get back at the officer for having arrested him and wanted to put a bomb in his police car.

The defendant has filed a motion to dismiss the information on two grounds. First, he claims that § 53a-179a is unconstitutionally void for vagueness and overbreadth. Second, the defendant alleges that the affidavit accompanying the warrant contains a material misstatement and does not contain sufficient reliable information "for a violation of this statute." No challenge is made with respect to the charge of conspiracy to commit arson in the third degree.

The defendant's attack is predicated upon the first and the fourteenth amendments to the United States constitution and articles first, fourth and fifth of the Connecticut constitution. Since no separate analysis under the Connecticut constitution has been furnished by the defendant, the court declines to undertake such an analysis. *State* v. *Herring*, 210 Conn. 78, 98 n.19, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989).

Ordinarily, a trial court's analysis of a constitutional attack on an otherwise validly enacted statute begins

recklessly causes destruction or damage to a building, as defined in section 53a-100, of his own or of another by intentionally starting a fire or causing an explosion.

"(b) Arson in the third degree is a class C felony."

with certain basic underlying principles of statutory construction. The most fundamental of these is that the accused is entitled to have a penal statute construed strictly in his favor. *State* v. *Whiteman,* 204 Conn. 98, 101, 526 A.2d 869 (1987). This principle is all the more compelling where, as here, the attack is predicated on first amendment grounds.[3] *Buckley* v. *Valeo,* 424 U.S. 1, 76–77, 96 S. Ct. 612, 46 L. Ed. 2d 659 (1976); *State* v. *Proto,* 203 Conn. 682, 696, 526 A.2d 1297 (1987).

These principles, which have retained their vitality, were recently reiterated by the Connecticut Supreme Court in *State* v. *Breton,* 212 Conn. 258, 562 A.2d 1060 (1989). In reviewing these standards, the court discussed the framework used in construing this type of statute. "The party attacking a validly enacted statute, however, bears the heavy burden of proving its unconstitutionality beyond a reasonable doubt and we indulge in every presumption in favor of the statute's constitutionality. *Motor Vehicle Manufacturers Assn. of the United States, Inc.* v. *O'Neill,* 212 Conn. 83, 100, 561 A.2d 917 (1989); *Zapata* v. *Burns,* 207 Conn. 496, 507–508, 542 A.2d 700 (1988); *State* v. *Hernandez,* 204 Conn. 377, 385, 528 A.2d 794 (1987). In choosing between two constructions of a statute, one valid and one constitutionally precarious, we will search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent. See *Motor Vehicle Manufacturers Assn. of the United States, Inc.* v. *O'Neill,* supra, 96; *McConnell* v. *Beverly Enterprises-Connecticut, Inc.,* 209 Conn. 692, 706, 553 A.2d 596 (1989); *Bishop* v. *Kelly,* 206 Conn. 608, 617, 539 A.2d 108 (1988); *French* v. *Amalgamated Local Union 376,* 203 Conn. 624, 636–37, 526 A.2d 861 (1987);

---

[3] The first amendment of the United States constitution occupies a special place in the kingdom of constitutional rights. In fact, the United States Supreme Court elevated it to an exalted position in *Texas* v. *Johnson,* 491 U.S. 397, 109 S. Ct. 2533, 105 L. Ed. 2d 342 (1989).

see also *Lublin* v. *Brown,* 168 Conn. 212, 219–20, 362 A.2d 769 (1975). We undertake this search for a constitutionally valid construction when confronted with criminal statutes as well as with civil statutes. *State* v. *Snook,* 210 Conn. 244, 251, 555 A.2d 390 (1989); *State* v. *Champagne,* 206 Conn. 421, 437, 538 A.2d 193 (1988)." Id., 269.

Section 53a-179a must now be considered from the dual first amendment perspective of vagueness and overbreadth. It is well recognized that the doctrines of vagueness and overbreadth are so closely related that sometimes the two are functionally indistinguishable. *State* v. *Proto,* supra, 706. At the same time, a vagueness challenge usually is coupled with a due process claim to the effect that the statute is so lacking in clarity and precision as to fail utterly in delineating the ascertainable standards of conduct that due process requires. *State* v. *Schriver,* 207 Conn. 456, 464–65, 542 A.2d 686 (1988).

A vagueness attack may take two forms. First, the accused may argue that the particular statute is void for vagueness by virtue of its applicability to the particular facts at issue (the "as applied" analysis). *State* v. *Proto,* supra, 696; *State* v. *Pickering,* 180 Conn. 54, 57, 428 A.2d 322 (1980). Second, whenever a particular portion of a statute is so vague as to implicate first amendment rights and consequently has a "chilling effect" on the remainder of the statute, its constitutionality is tested for vagueness on its face ("facial" analysis). *State* v. *Proto,* supra, 697. In such a case, the defendant may challenge the validity of the entire statute even though his own conduct may clearly fall within only one of the statute's proscriptions. See *Aptheker* v. *Secretary of State,* 378 U.S. 500, 516, 84 S. Ct. 1659, 12 L. Ed. 2d 992 (1964). If the statute survives constitutional scrutiny on a facial analysis, it may not necessarily survive an as applied analysis.

Whenever a portion of a statute appears to be void for vagueness on its face, thereby threatening to produce a chilling effect on the remainder of the statute which might otherwise be valid, Connecticut courts, like the federal courts, have, whenever possible, applied a "judicial gloss" to the statute to save it from fatal infection and inevitable invalidation. See *State* v. *Schriver,* supra, 464. Such judicial gloss may be found in recognized methods of statutory construction including references to judicial opinions involving the same or similar statutes of other jurisdictions, the common law, legal dictionaries or treatises that may be necessary to ascertain a statute's meaning. *State* v. *Proto,* supra, 699; *State* v. *Eason,* 192 Conn. 37, 46, 470 A.2d 688 (1984); *State* v. *Pickering,* supra, 62–63.

Thus, the elixir of judicial gloss may be extracted from numerous sources and applied liberally to the whole surface of the statute. In *State* v. *Cavallo,* 200 Conn. 664, 667, 513 A.2d 646 (1986), our Supreme Court upheld General Statutes § 53a-151[4] against a void for facial vagueness attack. The court held that the word "induce" as used in the statute clearly informs persons of ordinary intelligence that any conduct, either physical or verbal, can potentially give rise to criminal liability. Id., 669. The court held that "[a]lthough the statute does not expressly mandate that the perpetrator intend to cause the witness to alter or withhold his testimony, this implicit requirement is apparent when the statute is read as a whole." Id., 668. The court reasoned that "[t]he legislature's choice of the verb

---

[4] General Statutes § 53a-151 provides: "TAMPERING WITH A WITNESS: CLASS D FELONY. (a) A person is guilty of tampering with a witness if, believing that an official proceeding is pending or about to be instituted, he induces or attempts to induce a witness to testify falsely, withhold testimony, elude legal process summoning him to testify or absent himself from any official proceeding.

"(b) Tampering with a witness is a class D felony."

'induce' connotes a volitional component of the crime of tampering that would have been absent had it employed a more neutral verb such as 'cause.' " Id., 669. Finally, the court stated that "the statute's application to unsuccessful, as well as successful, attempts to induce a witness to render false testimony supports our conclusion that the statute focuses on the mental state of the perpetrator to distinguish culpable conduct from innocent conduct." Id.

In reading the statute at issue here, it is apparent that there is an implicit requirement that the accused intend to cause injury to or destruction of public or private property. Each of the words that the legislature chose to include in the statute clearly connotes the volitional component to accomplish a specific result. As the *Cavallo* court stated, "[a]s long as intent is a necessary element of the crime under § 53a-151, which penalizes only verbal acts relating to a specific pending prosecution, the statute casts no chilling effect on general exhortations concerning cooperation with judicial proceedings." Id., 672; see also *State* v. *Hawkins,* 19 Conn. App. 609, 615, 563 A.2d 745, cert. denied, 212 Conn. 820, 565 A.2d 541 (1989), where the Appellate Court held that the word "provokes" in General Statutes § 53a-19 (c) is imbued with its own aspect of intent.

Thus, the requirement of intent that must be read into § 53a-179a preserves the statute from a constitutional demise under the first amendment.

Judicial gloss may also be found in the decisions of other jurisdictions. The New Jersey courts have upheld a substantially similar statute against a first amendment vagueness challenge.[5] *State* v. *Cappon,* 118 N.J.

---

[5] The statute in issue in both *State* v. *Cappon,* 118 N.J. Super. 9, 285 A.2d 287 (1971), and *State* v. *Hopson,* 109 N.J. Super. 382, 263 A.2d 205 (1970), aff'd, 119 N.J. Super. 84, 290 A.2d 295 (1972), N.J. Rev. Stat. § 2A:148-10 (1951), which has since been repealed, provided: "INCITING PERSONAL VIOLENCE OR DESTRUCTION OF PROPERTY. Any person who, in public or pri-

Super. 9, 285 A.2d 287 (1971); *State* v. *Hopson,* 109 N.J. Super. 382, 263 A.2d 205 (1970), aff'd, 119 N.J. Super. 84, 290 A.2d 295 (1972). *Hopson* is particularly instructive because of its interpretation of the words "incitement" and "encouragement" as contained in the counterpart statute. As the court stated, "[i]f acts denouncing incitement to crime are void, the legal theories and principles behind an accessory before the fact or aiding, abetting or encouraging crime under our statutes would fall and a large part of our criminal law would have to be erased from the books." *State* v. *Hopson,* supra, 387. As the court poignantly observed, "[t]he offense made criminal is the incitement to commit an offense and not the commission of the criminal act itself"; or put another way, "[t]he gravamen of the statutory offense lies in the incitement or encouragement of the commission of the offense even though . . . there may not be an actual assault." Id., 388.

The United States district court for Connecticut agreed with this principle when it stated that advocacy of action rather than advocacy of ideas may be restricted without violating first amendment rights. *Anderson* v. *Vaughn,* 327 F. Sup. 101 (D. Conn. 1971). Indeed, the same court upheld General Statutes § 53-44, the predecessor of § 53a-179a, on first amendment grounds. *Turner* v. *LaBelle,* 251 F. Sup. 443 (D. Conn. 1966). In *Anderson,* the court specifically rejected a facially void for vagueness argument. In reaching its

vate, by speech, writing, printing or otherwise, advocates, encourages, justifies, praises or incites:

"a. The unlawful burning or destruction of public or private property; or

"b. Assaults upon any of the armed forces of the United States, the national guard, or the police force of this or any other state or of any municipality; or

"c. The killing or injuring of any class or body of persons, or of any individual—

"Is guilty of a high misdemeanor."

conclusion, the court held that the Connecticut statute cannot fairly be read to reach speech of a character beyond the threshold of criminal incitement. *Anderson* v. *Vaughn,* supra, 104.

In the present case, when the warrant is distilled down to fit the language of the statute, the result is that the warrant charges the accused with soliciting and/or inciting the manufacture of a pipe bomb that was intended to be used to damage a police car.[6] This act, in fact, solicited the violation of General Statutes § 53-80a, which prohibits a person from fabricating any type of explosive designed to be dropped, hurled or set in place to be exploded by a timing device. Such a crime is designated a class B felony. Thus, the accused here sought to constitute Tolmoff as an accessory to the crime with which he was charged by the performance of an act which, in and of itself, is a crime.

The court's rationale in *Turner* v. *LaBelle,* supra, is helpful for analysis. The court first condemned the statute in the following language. "The most vulnerable part of the statute is that part which penalizes praising or justifying. These acts necessarily look to past events, and the statute might be read as penalizing praising the past event without any intention to suggest future conduct, or any such effect. But we do not believe that the legislature intended the statute to be read, or that a Connecticut court would so interpret it." Id., 446.

In rehabilitating the statute otherwise vulnerable to a vagueness challenge, the court stated that "[g]enerally it makes sense to ascribe a particular separate meaning to each of a limited number of words used disjunctively in a statute. But where the legislature, out

---

[6] It is immaterial that the telephone conversation which elicited this solicitation was initiated by someone other than the defendant.

of a desire to assure that no artful semanticist will escape the burden of the statute, employs, indiscriminately, seriatim, a number of similar words, some virtually identical, others differing slightly, the better practice would appear to be to let each help to define the other. Accordingly we read 'justifies' and 'praises' in the sense of 'encourages,' 'advocates' and 'incites.' Thus read, the statute is neither overbroad nor vague, nor does it, though precise, penalize constitutionally protected conduct." Id.

This approach seems to be in accord with the approach of state courts. See *State* v. *Horne,* 19 Conn. App. 111, 138, 562 A.2d 43, cert. granted, 213 Conn. 807, 568 A.2d 793 (1989), where the Appellate Court indicated that the meaning of "wrongful taking" and "wrongful withholding" as contained in General Statutes § 53a-133 (2), overlap. So, in a given case, the words of a statute, though appearing to have different meanings, in fact overlap in their meanings.

While this analysis may be sufficient to rescue the statute from its constitutional illness, this court prefers to revive the statute on a slightly different basis. The court does not agree with *Turner* that the acts classified in the statute "necessarily look to past events." They can and should be given a limited or narrowing construction, thus supplying additional judicial gloss to the tarnished surface. For instance, words of praise or justification uttered contemporaneously with the act of injury or destruction may be and usually are calculated to stimulate and to enliven the actor to the successful completion of his crime. This seems to be a more pragmatic way to apply the gloss.

As noted above, the doctrines of overbreadth and vagueness are so closely related that they are sometimes functionally indistinguishable and often are merged in the process of statutory construction. *State* v. *Proto,* supra, 706.

"The essence of an overbreadth challenge is that a statute that proscribes certain conduct, even though it may have some permissible applications, sweeps within its proscription conduct protected by the first amendment. . . . Overbroad statutes, like vague ones, inhibit the exercise of constitutionally protected conduct." (Citations omitted.) Id., 707. Otherwise stated, a statute that is void for overbreadth is one that purports to reach protected as well as unprotected conduct and therefore must be struck down on its face and held to be incapable of any constitutional application. *Broadrick* v. *Oklahoma,* 413 U.S. 601, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973). As Justice White characterized it in *Broadrick,* the overbreadth doctrine is "strong medicine" and therefore should be sparingly applied and only as a last resort. Id., 613. It has not been invoked when a limiting construction has been or could be placed on the challenged statute. "Equally important, overbreadth claims, if entertained at all, have been curtailed when invoked against ordinary criminal laws that are sought to be applied to protected conduct." Id. Thus, the court in *Broadrick,* distinguished a statute that regulates conduct from one that regulates speech.

The approach to an overbreadth analysis is very similar to the approach to a vagueness claim. While, as discussed above, the court will attempt to apply judicial gloss to correct a vagueness defect, in the area of overbreadth, the court employs a slightly different technique with essentially the same practical result. For instance, in *State* v. *Proto,* supra, 709, the court applied a "narrowing" construction to the relevant statutory language to ensure that the reach of the statute was not impermissibly broad. So too in *Broadrick* v. *Oklahoma,* supra, 617, where in considering a "*Proto*-type" statute, the court refused to invoke the doctrine of overbreadth where a "limiting construction" could be placed

on the challenged language. Thus, while gloss is applied to a statute to reclaim it from the obscurity of vagueness, a narrowing construction is applied to a statute to restrict its overbreadth.

In the present case, the defendant claims that the statutory terms "justifies" and "praises" are overbroad because they would, for example, punish someone for commending another for breaking a courthouse window. Such a construction of the statute on its face would, of course, punish clearly protected conduct. The application of a narrowing construction delivers it from the fatal sweep of facial overbreadth.

As the final step in the process, the actual words employed by the defendant as contained in the affidavit accompanying the search warrant must be analyzed. This is not a case where words constitute mere advocacy of the use of force or violence without more. See *Brandenburg* v. *Ohio,* 395 U.S. 444, 89 S. Ct. 1827, 23 L. Ed. 2d 430 (1969). The actual words used must be examined in the light cast by certain key United States Supreme Court decisions. With regard to the specific, active verbs of "advocating" and "soliciting," which seem to be the components of the statute involved in this case, the court held in *NAACP* v. *Claiborne Hardware Co.,* 458 U.S. 886, 102 S. Ct. 3409, 73 L. Ed. 2d 1215, reh. denied, 459 U.S. 898, 103 S. Ct. 199, 74 L. Ed. 2d 160 (1982), that a state may punish advocacy that is directed to inciting or to producing imminent lawless action and is likely to incite or to produce such action. See *Noto* v. *United States,* 367 U.S. 290, 81 S. Ct. 1517, 6 L. Ed. 2d 836 (1961). When this principle is applied to the present case, it is apparent that the "imminent lawless action" was the act of making the pipe bomb rather than the subsequent likelihood of injury to the police officer's vehicle.

In *Samuels* v. *Mackell,* 401 U.S. 66, 75, 91 S. Ct. 764, 27 L. Ed. 2d 688 (1971), Justice Douglas, in a concur-

ring opinion, indicated that persuasion of another by means of overt acts which fall within the penumbra of advocacy and which relate to the acquisition of weapons, gunpowder and the like, plainly have no first amendment protection.

In *Yates* v. *United States*, 354 U.S. 298, 77 S. Ct. 1064, 1 L. Ed. 2d 1356 (1957), the court overturned a conviction because the trial judge's instructions allowed conviction for mere advocacy unrelated to its tendency to produce forceable action. When tested by this standard and when taken in the context of the previous day's conversation with Tolmoff's brother, the words of the defendant had a tendency to produce the forceable action of the fabrication of a pipe bomb, an act which, by itself, would have been a violation of § 53-80a.

In *United States* v. *Dellinger*, 472 F.2d 340 (7th Cir. 1972), cert. denied, 410 U.S. 970, 93 S. Ct. 1443, 35 L. Ed. 2d 706 (1973), the defendants were charged under an anti-riot statute with intent to incite, to promote and to encourage a riot. The court drew a crucial distinction between a causal and an active role in producing the violent act. Id., 359. The court stated that if the expressive conduct is related to an active rather than to a causal role, the expression is therefore carved away from the protection of the first amendment. Thus, the court said that the test is whether the expression has a very substantial capacity to propel action. Or put another way, "whether the harm sought by expression is immediate and instantaneous and irremediable except by punishing the expression and thereby preventing the conduct . . . ." Id., 360.

The obvious question is whether the violent act which the statute proscribes must have been committed in order to constitute a violation of the statute. In *Dellinger*, the court answered this question in the nega-

tive when it observed that the causal relationship between the inciting and the violent act is sufficient to satisfy the test. The violent act need not be committed. The court reached the same result with regard to the word "urge" as used in the statute. The court said that under its dictionary definition of "persuasion" the term as used is unrelated to its potential for success in producing the desired action but embodies the required relation of expression to action. Thus, "urging or instigating" as used in the statute puts a sufficient gloss of propulsion on the expression so that it can be carved away from the comprehensive protection of the first amendment guarantee of freedom of speech. Id., 362.

Particularly analogous to the facts in the present case is the *Dellinger* court's statement that even if the overt act could be a speech which only was a step toward one of the proscribed elements in the statute, taking these elements as goals, "the statute adequately establishes the required relationship to action . . . ." Id. In the present case, we have a situation where the defendant solicited Tolmoff to fabricate a pipe bomb. This solicitation was a step on the way to the goal of making a pipe bomb which of itself is an illegal act.

In conclusion, for the foregoing reasons, the defendant's challenge to the constitutionality of § 53a-179a by way of a motion to dismiss must fail.

While the defendant also asserts as a separate ground for dismissal that the supporting affidavit contains a material misstatement and does not contain sufficient reliable information to constitute a violation of the statute, it is believed that the foregoing discussion disposes of this claim and therefore obviates the need for separate analysis on this issue. For the foregoing reasons, the motion to dismiss is denied.