GARY W. FRENCH *v.* AMALGAMATED LOCAL UNION 376, UAW ET AL.
(13059)

PETERS, C. J., HEALEY, SHEA, SANTANIELLO and CALLAHAN, Js.

Argued March 11—decision released June 2, 1987

*Daniel E. Livingston,* with whom was *Ruth L. Pulda,* for the appellants-appellees (defendants).

*Peter A. Janus,* with whom was *Kenneth R. Plumb,* for the appellee-appellant (plaintiff).

*Martin Margulies* and *Shelley White* filed a brief for the Connecticut Civil Liberties Union Foundation as amicus curiae.

PETERS, C. J. The principal issue in this case is the constitutionality of General Statutes § 31-120,[1] which bans all residential picketing except labor picketing conducted at a residence located at the situs of a labor dispute. The plaintiff, Gary W. French, the president of Colt Industries/Firearms Division, filed an application in the Superior Court for a temporary injunction to prohibit the defendants, Amalgamated Local Union 376, UAW and other affiliated labor organizations, from continuing to picket on the street in front of his residence in Vernon. Determining that the three labor demonstrations previously held by the defendants at the plaintiff's home were proscribed by § 31-120, and that the defendants would continue to hold such demon-

---

[1] "[General Statutes] Sec. 31-120. PICKETING OF RESIDENCES. No person shall engage in picketing before or about the home or residence of any individual unless such home or residence is adjacent to or in the same building or on the same premises in which such person was employed and which employment is involved in a labor dispute. Any person who violates the provisions of this section shall be fined not more than two hundred dollars or imprisoned not more than six months or both."

strations unless enjoined from doing so, the trial court issued a temporary injunction that prohibits the defendants from any further picketing at the plaintiff's home.[2] The defendants' appeal from that injunction has been transferred to this court.[3] We conclude that § 31-120 is a constitutionally impermissible regulation of speech that violates the first and fourteenth amendments to the United States constitution, and that the trial court's order enjoining the defendants' picketing is therefore invalid.

The temporary injunction was based on the following facts. After working without a contract since March, 1985, the members of Amalgamated Local Union 376, UAW, in January, 1986, organized a strike at Colt Industries/Firearms Division. Subsequently, during the summer and early fall of 1986, the defendants held three peaceful demonstrations on the street outside the plaintiff's residence. The stated purpose of the demonstrations was to make the plaintiff aware of the personal hardship suffered by the families of the strikers and to encourage him to address the strikers' concerns.

The first demonstration occurred on July 1, 1986, at about 3:30 p.m., when approximately thirty adults and thirty-five children marched along the street in front of the French residence, chanting and carrying placards

---

[2] The temporary injunction issued by the trial court, dated September 29, 1986, provides in relevant part: "[I]t is ORDERED that the Defendants and all their members, officers, agents, or employees, and all persons acting in concert with or otherwise participating with the Defendants hereto or any of them or acting in their aid or behalf or under their direction, supervision or control be and they hereby are enjoined, restrained and prohibited from:

"Congregating or individually engaging in any picketing, or similar demonstration, before on and about the Plaintiff's residence at 36 Boulder Crest Lane, Vernon, Connecticut."

[3] This court granted, on November 24, 1986, the defendants' motion for an expedited appeal.

with messages related to the labor dispute. The second demonstration was held on August 27, 1986, at approximately 7:30 p.m. Between 200 and 250 adults marched in front of the French residence, singing and wearing buttons. On that occasion, however, the demonstrators did not carry placards. At the defendants' request, the Vernon Chief of Police, James Thomas, arranged to have two representatives of the defendants deliver a letter to the plaintiff during that demonstration. The third demonstration, which involved approximately the same number of people as the second, took place on September 9, 1986, at about 7:30 p.m. It was similar to the second demonstration, except that some demonstrators carried candles and no letter was delivered to the plaintiff.[4]

Following the third demonstration, the plaintiff filed in the Superior Court a verified complaint and application for a temporary restraining order and/or temporary and permanent injunction. The complaint alleged, inter alia, that the defendants' actions on the above three occasions constituted unlawful conduct in direct violation of § 31-120.[5] After ordering the defendants to show cause why a temporary injunction should not be issued, the trial court held a hearing at which both parties appeared. Rejecting the defendants' claim that § 31-120 violated their rights to free speech and equal protection of the law under the state and federal constitutions, the court granted the plaintiff a temporary injunction. The court found that unless the defendants were temporarily enjoined from demonstrating at the plaintiff's residence, which the court deemed "unlawful" conduct in violation of § 31-120,

---

[4] The defendants asserted in their main brief to this court that they wish to organize further labor demonstrations in residential neighborhoods.

[5] The second count of the plaintiff's complaint asserted a common law tort claim. The temporary injunction, however, was based solely upon the defendants' alleged violation of General Statutes § 31-120.

the plaintiff would suffer "immediate substantial and irreparable injury."

In their appeal,[6] the defendants renew their claim that § 31-120 is unenforceable becauses it deprives them of their constitutional rights. Because we agree with their contention that, on its face, the statute violates their rights of free speech and equal protection of the law guaranteed to them by the first and fourteenth amendments to the United States constitution, we find error.[7]

## I

Our analysis of the constitutionality of § 31-120 must begin with an examination of the language of the statute so that we may determine the scope of the conduct that it intends to regulate. Section 31-120 expressly

---

[6] In the absence of statutory exceptions, decisions either granting or denying temporary injunctions generally are not final judgments and are therefore not immediately appealable. Practice Book § 4000 (formerly § 3000); *Doublewal Corporation* v. *Toffolon,* 195 Conn. 384, 389, 488 A.2d 444 (1985); *Board of Education* v. *Shelton Education Assn.,* 173 Conn. 81, 88, 376 A.2d 1080 (1977); *Olcott* v. *Pendleton,* 128 Conn. 292, 295, 22 A.2d 633 (1941). The defendants in this case, however, are entitled to appeal the temporary injunction because immediate review of a temporary injunction in a case arising out of a labor dispute is specifically authorized by General Statutes § 31-118. Section 31-118 provides in relevant part: "APPEAL. When any court or a judge thereof issues or denies a temporary injunction in a case involving or growing out of a labor dispute and either party is aggrieved by the decision of the court or judge upon any question of law arising therein, he may appeal from the final judgment of the court or of such judge to the appellate court at any time within two weeks of the entry of such judgment."

[7] The first amendment to the United States constitution provides in relevant part: "Congress shall make no law . . . abridging the freedom of speech . . . ."

The fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

The defendants also rely upon article first, §§ 1, 4, 5 and 20, of the Connecticut constitution in challenging the constitutionality of General Statutes § 31-120. Our holding today, however, rests only upon federal constitutional law.

bans all "picketing before or about the home or residence of any individual *unless* such home or residence is adjacent to or in the same building or on the same premises in which such person was employed and which employment is involved in a labor dispute." (Emphasis added.) Read literally, the statute prohibits all residential picketing except labor picketing conducted at a residence located at the situs of a labor dispute.

Residential picketing statutes such as § 31-120 restrict the fundamental right to freedom of speech and thus implicate both the first and fourteenth amendments to the United States constitution. Indeed, peaceful picketing has generally been recognized as a constitutionally protected activity. *Police Department of Chicago* v. *Mosley,* 408 U.S. 92, 98, 92 S. Ct. 2286, 33 L. Ed. 2d 212 (1972); *Shuttlesworth* v. *Birmingham,* 394 U.S. 147, 155, 89 S. Ct. 935, 22 L. Ed. 2d 162 (1969); *Cox* v. *Louisiana,* 379 U.S. 536, 546, 85 S. Ct. 453, 13 L. Ed. 2d 471 (1965); *Edwards* v. *South Carolina,* 372 U.S. 229, 235, 83 S. Ct. 680, 9 L. Ed. 2d 697 (1963); *Thornhill* v. *Alabama,* 310 U.S. 88, 100–101, 60 S. Ct. 736, 84 L. Ed. 1093 (1940). What has not always been entirely clear, however, is the extent to which picketing of private residences enjoys constitutional protection, because such picketing potentially infringes upon the individual's right to privacy in his home. See *Carey* v. *Brown,* 447 U.S. 455, 471, 100 S. Ct. 2286, 65 L. Ed. 2d 263 (1980); *Gregory* v. *Chicago,* 394 U.S. 111, 125, 89 S. Ct. 946, 22 L. Ed. 2d 134 (1969) (Black, J., concurring). The constitutional right to picket must be weighed against the interest of the state, acting under its police power, in promoting the well-being of the community and in preserving residential privacy. See *Kovacs* v. *Cooper,* 336 U.S. 77, 83, 69 S. Ct. 448, 93 L. Ed. 513 (1949); *Euclid* v. *Ambler Co.,* 272 U.S. 365, 392, 47 S. Ct. 114, 71 L. Ed. 303 (1926). Legislation restricting residential picketing therefore

points up the inherent conflict between the individual's right to picket under the free speech and equal protection guarantees of our federal constitution, and the state's authority to maintain the sanctity of the home in order to protect individual privacy interests. This conflict has been resolved, by the United States Supreme Court, by subjecting restrictions on residential picketing to strict judicial scrutiny to insure that they are narrowly tailored to serve a substantial governmental interest and that they do not unduly impinge upon constitutionally protected speech. *Carey* v. *Brown,* supra, 463; *Police Department of Chicago* v. *Mosley,* supra; see also *Renton* v. *Playtime Theatres, Inc.,* 475 U.S. 41, 46–47, 106 S. Ct. 925, 89 L. Ed. 2d 29 (1986).

Federal and state precedents make it clear that the defendants in this case are entitled to raise constitutional concerns that transcend the particular circumstances of their case. In order to avoid the significant compromise of recognized first amendment protections of parties not before the court, litigants are allowed to challenge the validity of a law on first amendment grounds where the law would be invalid as applied to others, even if the law were to be deemed constitutional as applied to the litigant. *Aptheker* v. *Secretary of State,* 378 U.S. 500, 516, 84 S. Ct. 1659, 12 L. Ed. 2d 992 (1964); *NAACP* v. *Button,* 371 U.S. 415, 432–33, 83 S. Ct. 328, 9 L. Ed. 2d 405 (1963); *Thornhill* v. *Alabama,* supra, 97–98; *State* v. *Pickering,* 180 Conn. 54, 57–58 n.3, 428 A.2d 322 (1980). Accordingly, the plaintiff has raised no question about the defendants' standing to seek our review of the full panoply of constitutional questions that are implicated by the trial court's issuance of an injunction pursuant to § 31-120.

## II

Under first amendment doctrine, any statute that impairs rights to free speech will be invalid unless it

serves a substantial state interest and is narrowly drawn to achieve that end. Applying that standard to § 31-120 would, at a minimum, raise serious doubts about its constitutional viability. Independent consideration of this issue is, however, essentially foreclosed because § 31-120, on its face, is virtually identical to an Illinois statute declared unconstitutional by the United States Supreme Court in *Carey* v. *Brown,* supra.[8]

Much like § 31-120, the Illinois statute under attack in *Carey* v. *Brown* imposed a broad ban on residential picketing, declaring in part that "[i]t is unlawful to picket before or about the residence or dwelling of any person, except when the residence or dwelling is used as a place of business." Ill. Ann. Stat., c. 38 § 21.1-2 (1977). Significantly, the Illinois statute, again much like our own, provided an exception for, inter alia, "the peaceful picketing of a place of employment involved in a labor dispute." Ill. Ann. Stat., c. 38 § 21.1-2 (1977).

In determining that the Illinois statute was constitutionally unacceptable, the United States Supreme Court in *Carey* v. *Brown* undertook a three step analysis. It determined first that it would accept the construction of the Illinois statute adopted by the Seventh Circuit Court of Appeals. Accordingly, the court construed the express terms of the Illinois statute to permit residential picketing only at "places of employment involved in labor disputes," and to forbid picketing at "all other residences and dwellings." *Carey* v. *Brown,* supra, 461 n.5. The court then inquired whether such a statute vio-

---

[8] Illinois Annotated Statutes, c. 38 § 21.1-2 (1977) provides: "It is unlawful to picket before or about the residence or dwelling of any person, except when the residence or dwelling is used as a place of business. However, this Article does not apply to a person peacefully picketing his own residence or dwelling and does not prohibit the peaceful picketing of a place of employment involved in a labor dispute or the place of holding a meeting or assembly on premises commonly used to discuss subjects of general public interest."

lated the free speech and equal protection guarantees of our federal constitution, and concluded that it did so. Finally, the court considered and rejected the claim of the statute's proponents that the statute had been finely tailored to serve substantial governmental interests that outweighed the statute's impact on constitutionally protected interests. Because, in one form or another, each part of this analysis has been put into question in the present challenge to the constitutionality of § 31-120, we must review carefully how the United States Supreme Court arrived at its decision.

As a matter of statutory construction, we will first consider the constitutionality of § 31-120 as it appears on its face. We can discern no significant distinction between the terms of § 31-120, on its face, and those of the Illinois statute found constitutionally wanting in *Carey* v. *Brown*.[9]

We next consider whether the statute satisfies the mandates of free speech and equal protection law. *Carey* v. *Brown* determined that a statute like § 31-120, which permits some labor residential picketing and prohibits all nonlabor residential picketing, violates the free speech and equal protection guarantees of our federal constitution. A statute that "describes permissible picketing in terms of its subject matter" violates a fundamental tenet of the first amendment, "that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Department of Chicago* v. *Mosley,* supra, 95; *Carey* v. *Brown,* supra, 463; *Cohen* v. *California,* 403 U.S. 15, 24, 91 S. Ct. 1780, 29 L. Ed. 2d 284 (1971); *Street* v. *New York,* 394 U.S. 576, 594, 89 S. Ct. 1354, 22 L. Ed. 2d 572 (1969); *New York Times Co.* v. *Sullivan,* 376 U.S. 254, 269–70, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964).

---

[9] For purposes of comparison, the two statutes are set forth, in their entirety, in footnotes 1 and 8, supra.

Moreover, as the United States Supreme Court stated in *Police Department of Chicago* v. *Mosley,* supra, and reaffirmed in *Carey* v. *Brown,* supra, any restriction on expressive activity because of its content completely undermines the "profound national commitment to the principle that debate on public issues should be uninhibited, robust and wide-open . . . ." *New York Times Co.* v. *Sullivan,* supra, 270. By banning all residential picketing that does not relate to an ongoing labor dispute, § 31-120 serves to stifle the very debate on issues of public concern which the first amendment is intended to promote.

In addition to contravening the first amendment, the Illinois statute in *Carey* v. *Brown,* and § 31-120 by analogy, contain a further defect implicating the equal protection clause of the fourteenth amendment. They selectively exclude speakers from a public forum based upon the content of their speech. Underlying the public forum doctrine first enunciated in *Hague* v. *CIO,* 307 U.S. 496, 515, 59 S. Ct. 954, 83 L. Ed. 1423 (1939), is the recognition that streets, sidewalks, parks and certain other public places are held in trust for the public and have long been associated with the exercise of first amendment rights of speech and assembly. *Carey* v. *Brown,* supra, 460; *Hudgens* v. *NLRB,* 424 U.S. 507, 515, 96 S. Ct. 1029, 47 L. Ed. 2d 196 (1976); *Food Employees* v. *Logan Valley Plaza,* 391 U.S. 308, 315, 88 S. Ct. 1601, 20 L. Ed. 2d 603 (1968). This doctrine mandates that the government may not pick and choose among viewpoints in providing access to a public forum, by granting access to those whose views it finds acceptable and denying access to those whose views it deems unacceptable. *Carey* v. *Brown,* supra; *Police Department of Chicago* v. *Mosley,* supra, 98; see *Hudgens* v. *NLRB,* supra, 520; *Erznoznik* v. *Jacksonville,* 422 U.S. 205, 209, 215, 95 S. Ct. 2268, 45 L. Ed. 2d 125 (1975); *Cox* v. *Louisiana,* supra, 581. Therefore, when the

government enacts a regulation that "discriminate[s] among speech-related activities in a public forum," the equal protection clause requires that the regulation be narrowly tailored to serve substantial state interests, and that the justifications offered for any content-based distinctions contained in the regulation be carefully scrutinized. *Carey* v. *Brown,* supra, 461; *Police Department of Chicago* v. *Mosley,* supra, 98–99; *Dunn* v. *Blumstein,* 405 U.S. 330, 343–44, 92 S. Ct. 995, 31 L. Ed. 2d 274 (1972); *Williams* v. *Rhodes,* 393 U.S. 23, 30–31, 89 S. Ct. 5, 21 L. Ed. 2d 24 (1968); *United States* v. *O'Brien,* 391 U.S. 367, 376–77, 88 S. Ct. 1673, 20 L. Ed. 2d 672 (1968). Just as the application of that two part test in *Carey* v. *Brown,* supra, 463, rendered the Illinois statute invalid, it likewise renders § 31-120 constitutionally impermissible.

If the preferential treatment accorded to labor picketing rendered the Illinois statute invalid under the first and fourteenth amendments to the United States constitution; *Carey* v. *Brown,* supra, 471; then § 31-120 is equally unconstitutional unless the statute serves some substantial governmental interest in an appropriately narrowly tailored fashion. This issue too was raised in *Carey* v. *Brown,* where the appellants attempted to justify the statute's content-based distinction on the same two grounds that the plaintiff advances in this case: that the statute was carefully fashioned to promote residential privacy and to provide special protection for labor protests. The United States Supreme Court fully considered and rejected both contentions.

With respect to the residential privacy rationale, *Carey* v. *Brown,* supra, 464, acknowledged the legitimacy of the state's interest in preserving residential privacy, but it considered that interest to be an insufficient justification for the content-based distinction between labor and nonlabor picketing drawn by

the Illinois statute. In the court's view, the statute's total ban on nonlabor residential picketing was over-inclusive because it failed to distinguish among different types of nonlabor picketing and was not finely tailored to reflect the fact that some nonlabor pickets are more detrimental to privacy interests than others. Id. The court also determined that the statute was underinclusive because it permitted labor picketing at certain residences, thereby authorizing activity that undoubtedly would intrude on the very privacy the state allegedly sought to protect. Id. Furthermore, the court concluded that the statute's broad ban on nonlabor residential picketing could not be justified on the ground that it protected residential privacy because there had been no factual showing that the distinction between labor and nonlabor residential picketing had any bearing whatsoever on privacy interests. Id., 467.

The *Carey* court was similarly unpersuaded by the claim that labor demonstrations, in contrast to other types of demonstrations, are uniquely deserving of special constitutional protection. The court specifically rejected the proposition that "labor picketing is more deserving of First Amendment protection than are public protests over other" matters involving significant economic, political and social issues. Id.; cf. T. Emerson, The System of Freedom of Expression (1970) pp. 444–49. In addition, the court, sua sponte, considered and rejected the argument that a state may be obligated to provide a statutory exception for situs-related residential picketing in order to protect the right of employees to engage in peaceful picketing at the workplace, a right guaranteed by the National Labor Relations Act.[10] 29 U.S.C. § 157; *Carey* v. *Brown,* supra, 467 n.10; see *Machinists* v. *Wisconsin Employment*

[10] Individual states are generally required to enforce the rights of employees provided by federal labor statutes by virtue of the doctrine of federal preemption. *Sears, Roebuck & Co.* v. *Carpenters,* 436 U.S. 180, 192–93,

*Relations Commission,* 427 U.S. 132, 136 and n.2, 96 S. Ct. 2548, 49 L. Ed. 2d 396 (1976). Declining to carve out a constitutional exception for labor picketing, the court instead affirmed that public-issue picketing, which encompasses the entire spectrum of issues subject to public debate, is firmly positioned on the "highest rung of the hierarchy of First Amendment values." *Carey* v. *Brown,* supra; *Edwards* v. *South Carolina,* 372 U.S. 229, 235, 83 S. Ct. 680, 9 L. Ed. 2d 697 (1963).

Adhering to the federal precedents established in *Carey* v. *Brown* and *Police Department of Chicago* v. *Mosley,* we hold that § 31-120, on its face, is unconstitutional. Until such time as the United States Supreme Court chooses to depart from the holdings of these recent cases, they necessarily furnish the guidelines for our present review of legislation that infringes on constitutionally protected speech.[11]

### III

The conclusion that § 31-120 is unconstitutional on its face requires us to consider whether an alternate construction of § 31-120 would save it from constitutional demise. The ordinary rules of statutory construction do not apply when "a literal reading places a statute in constitutional jeopardy. We are bound to assume that the legislature intended, in enacting a par-

98 S. Ct. 1745, 56 L. Ed. 2d 209 (1978); *Machinists* v. *Wisconsin Employment Relations Commission,* 427 U.S. 132, 138-43, 96 S. Ct. 2548, 49 L. Ed. 2d 396 (1976).

[11] The plaintiff has filed a cross appeal which in fact merely asserts an alternate basis upon which he would have this court uphold the temporary injunction. He urges us to conclude, alternatively, that the injunction is valid because it can be grounded upon the claim of tortious invasion of privacy alleged in the second count of his complaint and application for a temporary injunction. The trial court, however, granted the injunction solely on the ground that the defendants' conduct violated General Statutes § 31-120, and made no findings regarding the allegation of tortious invasion of privacy. In the absence of an appropriate factual record, we decline to consider whether the injunction can be upheld on this alternate ground.

ticular law, to achieve its purpose in a manner which is both effective and constitutional. *Wagner* v. *Connecticut Personnel Appeal Board,* 170 Conn. 668, 674, 368 A.2d 20 (1976); *Whitfield* v. *Empire Mutual Ins. Co.,* 167 Conn. 499, 507–508, 356 A.2d 139 (1975); *Amsel* v. *Brooks,* 141 Conn. 288, 295, 106 A.2d 152, appeal dismissed, 348 U.S. 880, 75 S. Ct. 125, 99 L. Ed. 693 (1954)." *Moscone* v. *Manson,* 185 Conn. 124, 128, 440 A.2d 848 (1981).

To that end, the plaintiff vigorously urges us to adopt the construction of § 31-120 set forth by the Connecticut Circuit Court in *State* v. *Anonymous (1971–2),* 6 Conn. Cir. Ct. 372, 274 A.2d 897 (1971). See *DeGregory* v. *Giesing,* 427 F. Sup. 910, 912 and n.2 (D. Conn. 1977). Departing from a literal reading of the statute, *State* v. *Anonymous (1971–2),* supra, construed § 31-120 to be entirely inapplicable to nonlabor picketing, which continued to be permissible. With respect to labor picketing, all such picketing was forbidden in residential areas, but for the narrow exception for situs labor picketing. Id., 377–78.[12] Admittedly, such a reading of § 31-120 results in a more narrowly tailored regulation of picketing than does the far-reaching restriction that results from a literal construction of its terms. The question that remains is whether § 31-120, even as construed in *State* v. *Anonymous (1971–2),* is constitutionally permissible. The plaintiff insists that the *Anonymous* interpretation purges the statute of its constitutional infirmities. He argues that § 31-120, as construed in *State* v. *Anonymous (1971–2),* is distinguishable from the Illinois statute invalidated in *Carey* v. *Brown* because it permits all residential

---

[12] Although General Statutes § 31-120 does not expressly indicate that it applies solely to labor picketing, the *Anonymous* court apparently adopted that interpretation based upon its view that the statute was enacted in 1947 in direct response to several widely publicized labor disputes in progress at that time. *State* v. *Anonymous (1971-2),* 6 Conn. Cir. Ct. 372, 378 n.3, 274 A.2d 897 (1971).

picketing with the exception of labor picketing that is *not* conducted at a residence "adjacent to or in the same building or on the same premises in which such person was employed and which employment is involved in a labor dispute." According to the plaintiff, the statute thereby furthers the state's interest in protecting residential privacy, by limiting the secondary effects of labor picketing, without offending the constitutional underpinnings of free speech doctrine.

In our view, although the statute, as narrowly construed in *State* v. *Anonymous (1971-2)*, no longer imposes a sweeping ban on nonlabor residential picketing, it nonetheless remains constitutionally objectionable because it contains the same content-based distinction between labor and nonlabor picketing expressly rejected in *Carey* v. *Brown*. Whereas the Illinois statute involved in *Carey* v. *Brown* favored labor picketing over nonlabor picketing, the Connecticut statute, as interpreted in *State* v. *Anonymous (1971-2)*, would have the reverse effect, favoring nonlabor picketing over labor picketing. The *Anonymous* interpretation thus leads to the same unconstitutional result. Section 31-120 would still impermissibly discriminate against speech based upon its content.[13] Therefore,

---

[13] The plaintiff contends that, under his interpretation of General Statutes § 31-120, the statute constitutes a permissible content-neutral regulation of the location of labor picketing. As one commentator has observed, however, many statutes that can be characterized as time, place and manner regulations, such as the statutes invalidated in *Police Department of Chicago* v. *Mosley,* 408 U.S. 92, 92 S. Ct. 2286, 33 L. Ed. 2d 212 (1972), and *Erznoznik* v. *Jacksonville,* 422 U.S. 205, 95 S. Ct. 2268, 45 L. Ed. 2d 125 (1975), in fact depend upon the content of expression. M. Redish, "The Content Distinction in First Amendment Analysis," 34 Stan. L. Rev. 113, 114–15 (1981). Moreover, the plaintiff is foreclosed from pursuing this claim because the *Carey* court determined that the Illinois statute did not constitute a reasonable time, place and manner regulation applicable to residential picketing. *Carey* v. *Brown,* 447 U.S. 455, 471, 100 S. Ct. 2268, 65 L. Ed. 2d 263 (1980). Therefore, our own statute cannot be treated as a permissible time, place and manner regulation.

even adoption of the *Anonymous* court's strained interpretation of the language of the statute leaves § 31-120 in constitutional difficulty. Whether § 31-120 is read to accord preferential treatment to labor or nonlabor picketing, absent a narrowly tailored justification for the unequal treatment of speech on the basis of its content, which the record before us lacks, neither our construction of the statute nor the *Anonymous* interpretation renders it constitutional. See *Niemotko* v. *Maryland,* 340 U.S. 268, 272–73, 71 S. Ct. 325, 95 L. Ed. 267 (1951).

## IV

Our decision that § 31-120 is unconstitutional under both the first amendment and the fourteenth amendment to the United States constitution should not be understood to foreclose any and all regulation of residential picketing. Rather, the principles of the first amendment must be weighed against the state's longstanding and legitimate interest in preserving the sanctity of the home and the privacy that it affords. See generally comment, "Picketers at the Doorstep," 9 Harv. Civ. Rights-Civ. Lib. L. Rev. 95, 105–109 (1974). Indeed, we recognize that despite the broad reach of the first amendment in protecting the rights of free speech, the first amendment "does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron* v. *International Society for Krishna Consciousness,* 452 U.S. 640, 647, 101 S. Ct. 2559, 69 L. Ed. 2d 298 (1981); *Carey* v. *Brown,* supra, 471; *Police Department of Chicago* v. *Mosley,* supra, 98. Although a content-based restriction on speech like that contained in § 31-120 is impermissible, a state or municipality may strike a proper balance between competing first amendment principles and residential privacy concerns by enacting reasonable time, place and manner regulations that apply to all speech regardless of its content. *Carey* v.

*Brown,* supra; *Erznoznik* v. *Jacksonville,* supra, 209; see, e.g., *Kovacs* v. *Cooper,* 336 U.S. 77, 69 S. Ct. 448, 93 L. Ed. 513 (1949); *Cox* v. *New Hampshire,* 312 U.S. 569, 61 S. Ct. 762, 85 L. Ed. 1049 (1941). In order to pass constitutional muster, however, such time, place and manner regulations must be narrowly drafted to serve a substantial governmental interest and must allow for reasonable alternative avenues of communication.[14] *Renton* v. *Playtime Theatres, Inc.,* supra, 928; *Husti* v. *Zuckerman Property Enterprises, Ltd.,* 199 Conn. 575, 581, 508 A.2d 735 (1986); see also *Clark* v. *Community for Creative Non-Violence,* 468 U.S. 288, 293, 104 S. Ct. 3065, 82 L. Ed. 2d 221 (1984); *City Council* v. *Taxpayers for Vincent,* 466 U.S. 789, 807, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984); *United States* v. *Grace,* 461 U.S. 171, 177, 103 S. Ct. 1702, 75 L. Ed. 2d 736 (1983); *Perry Education Assn.* v. *Perry Local Educators' Assn.,* 460 U.S. 37, 45–46, 103 S. Ct. 948, 74 L. Ed. 2d 794 (1983); *Heffron* v. *International Society for Krishna Consciousness,* supra, 649, 654; *Friedson* v. *Westport,* 181 Conn. 230, 235–36, 435 A.2d 17 (1980).

When the legislature enacted § 31-120 some forty years ago, it could not have anticipated the subsequent development of the constitutional principles that now govern the validity of this statute. In light of the federal constitutional principles that have since evolved, we conclude that § 31-120, as it reads today, must be declared constitutionally invalid.

---

[14] We further note that General Statutes § 31-120 is not the only means available to the state to curtail certain residential picketing. For example, although the record before us does not indicate whether the activities of the defendants constituted unlawful conduct in violation of other criminal laws, residential picketing involving an entry on private property may be proscribed by our criminal trespass statutes, General Statutes §§ 53a-107 through 53a-109. Such conduct may also be enjoined in the proper circumstances pursuant to General Statutes §§ 31-114 and 31-115.

There is error, the order of the trial court is set aside and the case is remanded with direction to dissolve the temporary injunction.

In this opinion the other justices concurred.