[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: DEFENDANTS' MOTIONS TO DISMISS
On October 19, 1991, the defendants, Catherine Ball, Arlene Corey, William Mannetti and Derek Oatis were arrested and charged with violating General Statutes Section53a-183a, Connecticut's "Hunter Harassment" Act ("the Act"). That statute states that:
 (a) No person shall obstruct or interfere with the lawful taking of wildlife by another person at the location where the activity is taking place with intent to prevent such taking.
 (b) A person violates this section when he intentionally or knowingly: (1) drives or disturbs wildlife for the purpose of disrupting the lawful taking of wildlife where another person is engaged in the process of lawfully taking wildlife; (2) blocks, impedes or otherwise harasses another person who is engaged in the process of lawfully taking wildlife; (3) uses natural or artificial visual, aural, olfactory or physical stimuli to affect wildlife behavior in order to hinder or prevent the lawful taking of wildlife; (4) erects barriers with the intent to deny ingress or egress to areas where the lawful taking of wildlife may occur; (5) interjects himself into the line of fire; (6) affects the condition or placement of personal or public property intended for use in the CT Page 8116 lawful taking of wildlife in order to impair its usefulness or prevent its use; or (7) enters or remains upon private lands without the permission of the owner or his agent, with intent to violate this section.
 (c) For the purposes of this section, "taking" and "wildlife" shall be defined as in section 26-1.
 (d) Any person who violates any provision of this section shall be guilty of a class C misdemeanor.
General Statutes Section 53a-183a.
After pleading not guilty, the defendants filed identical motions to dismiss the charges, claiming that Section 53a-183a is unconstitutional, both on its face and as it has been applied in this case.[1] The defendants attached to their motions supporting memoranda, and the state has filed opposing memoranda. The defendants have also filed motions in limine in which they seek the exclusion of exhibits proffered by the state. It is believed by this court that this case represents the first challenge to General Statutes Section 53a-183a.
MOTIONS IN LIMINE
Because they relate to the motions to dismiss, the defendants' motions in limine will be considered first.
The state seeks to introduce as evidence the following documents: (1) a map of the Tunxis State Forest area; (2) a report entitled "An Evaluation of Deer Management Options"; (3) a document entitled "A Connecticut Deer Program Summary 1990"; (4) a document entitled "1992 Hunting and Trapping Guide"; (5) a list of statutes in other states similar to Connecticut's Hunter Harassment Act; (6) various documents regarding the defendants' arrests, including incident and case reports, investigation reports, misdemeanor and motor vehicle summonses and complaints for each defendant, and the statement of the complainant.
With the exception of (5), supra, the defendants have objected to the introduction of the aforesaid documents. Because the statute is being challenged as unconstitutional on its face, the inclusion, and examination, of the aforesaid materials is unnecessary. Consequently, this court hereby grants the defendants' motions in limine and said documents will not be considered. CT Page 8117
MOTIONS TO DISMISS
The defendants' motions to dismiss are filed pursuant to Practice Book Section 815, which states, in pertinent part, that a "claim that the law defining the offense charged is unconstitutional or otherwise invalid" is properly raised by a motion to dismiss. Practice Book Section 815.
In their motions to dismiss and supporting memoranda, the defendants contend that General Statutes Section 53a-183a is unconstitutional on its face in that it is unconstitutionally vague, in violation of theFourteenth Amendment to the United states Constitution and Article 1, Sections 8 and 9 of the Constitution of the State of Connecticut. The defendants also contend that the statute is overbroad in that it forbids activity that is protected under the First and Fourteenth Amendments of the United States Constitution, and Article 1, Sections 4 and 5 of Connecticut's Constitution. The state, in its memoranda in opposition to the motions to dismiss, contends that the statute is constitutional. This court's determination of the issues presented pursuant to the federal constitution will be dispositive of those claims regarding Connecticut's Constitution. Therefore, no independent analysis of the defendants' state constitution claims will be provided.[2]
Prior to discussing the merits of this case, a brief background is helpful. In 1985, Connecticut's legislature enacted the first Hunter Harassment Act, codified at General Statutes Section 53a-183a. This Act was challenged in Dorman v. Satti, 678 F. Sup. 375 (D.Conn. 1988), and found to be unconstitutional on its face by the court, Nevas, J. The state appealed to the Court of Appeals for the Second Circuit, which affirmed the District Court's decision. Dorman v. Satti, 862 F.2d 432 (2d Cir. 1988), cert. denied, 490 U.S. 1099, 109 S.Ct. 2450, 104 L.Ed.2d 1005
(1989). Consequently, Connecticut's legislature enacted the current General Statutes Section 53a-183a. That statute is the subject of this action.
"Ordinarily, a trial court's analysis of a constitutional attack on an otherwise validly enacted statute begins with certain basic underlying principles of statutory construction." State v. Leary, 41 Conn. Sup. 525, 526-27,590 A.2d 494 (1991, Mottolese, J.) The most fundamental of these is that the accused is entitled to have a penal statute construed strictly in his favor. State v. Whiteman, 204 Conn. 98,101, 526 A.2d 869 (1987). "This principle is all the more compelling where, as here, the attack is predicated on first CT Page 8118 amendment grounds." Leary, supra, 527, citing Buckley v. Valeo, 424 U.S. 1, 76-77, 96 S.Ct. 612, 46 L.Ed.2d 659
(1976); State v. Proto, 203 Conn. 682, 696, 526 A.2d 1297
(1987). Furthermore, statutory language which is clear on its face will be construed for what it says. In re John C.,20 Conn. App. 694, 696, 569 A.2d 1154 (1990).
Additionally, as our Supreme Court has noted:
 The party attacking a validly enacted statute, however, bears the heavy burden of proving its unconstitutionality beyond a reasonable doubt and we indulge in every presumption in favor of the statute's constitutionality. . . . In choosing between two constructions of a statute, one valid and one constitutionally precarious, we will search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent. . . .(Citations omitted.)
State v. Breton, 212 Conn. 258, 269, 652 A.2d 1060 (1989).
The Act must now be considered from the dualfirst amendment perspective of vagueness and overbreadth. It is well recognized that these doctrines are so closely related that the two are, occasionally, functionally indistinguishable. See, e.g., Proto, supra, 706; Leary, supra, 528. "At the same time, a vagueness challenge usually is coupled with a due process claim to the effect that the statute is so lacking in clarity and precision as to fail utterly in delineating the ascertainable standards of conduct that due process requires." Leary, supra, 528, citing State v. Schriver, 207 Conn. 456, 464-65, 542 A.2d 686 (1988).
This court must determine whether the Act extends to a substantial amount of constitutionally protected conduct. Village of Hoffman Estates v. Flipside Hoffman Estates, Inc., 455 U.S. 489, 494, 102 S.Ct. 1186, 1191,71 L.Ed.2d 362 (1982). Specifically, does the Act implicate the communicative aspect of the conduct it proscribes? Village of Hoffman Estates, supra. The language of the Act "plainly warns potential [violators] that the statute applies to any conduct that is intended to [obstruct or interfere with the lawful taking of wildlife by another person at the location where the activity is taking place with intent to prevent such taking.]" State v. Cavallo, 200 Conn. 664, 668,513 A.2d 646 (1986) (discussing General Statutes Section53a-151).
The Hunter Harassment Act "operates at the core of CT Page 8119 the First Amendment by [restricting the defendants] from engaging in [specific protests] on an issue of public concern." Frisby v. Schultz, 487 U.S. 474, 479,108 S.Ct. 2495 101 L.Ed.2d 420, 428 (1988). Such a protest is tantamount to expression. "The Supreme Court has determined that acts such as interference or harassment encompass verbal as well as physical conduct." Dorman, 862 F.2d at 436-37, citing Houston v. Hill, 482 U.S. 451, ___, 107 S.Ct. 2502,2512, 96 L.Ed.2d 398, ___ (1987). "Because of the importance of `uninhibited, robust, and wide-open' debate on public issues," Frisby, supra, quoting New York Times Co. v. Sullivan, 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686
(1964), restrictions on such issues have long been subjected to careful scrutiny. See e.g., Frisby, supra; Boos v. Barry,485 U.S. 312, 318, 108 S.Ct. 117, 99 L.Ed.2d 333 (1988). However, as both parties here readily concede, "[e]ven protected speech is not equally permissible in all places and at all times." Cornelius v. NAACP Legal Defense Educational Fund, Inc., 473 U.S. 788, 799, 105 S.Ct. 3439,87 L.Ed.2d 567 (1985). See also United States v. O'Brien, 391 U.S. 367,376-77, 88 S.Ct. 1673, 20 L.Ed.2d 672, 679-80 (1968). Therefore, this court must now determine whether the Act is content-based or content-neutral. See, e.g., French v. Amalgamated Local Union 376, 203 Conn. 624, 526 A.2d 861
(1987).
Because the Act does not regulate the content of the message espoused by the alleged violator, this court finds the Act to be content-neutral. See, e.g., Heffron v. International society for Krishna Consciousness, Inc.,452 U.S. 640, 648, 101 S.Ct. 2559, 69 L.Ed.2d 298
(1981); Consolidated Edison Co. v. Public Service Commission,447 U.S. 530, 536, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1980); French, supra, 633. Such a finding is demonstrated by the fact that an individual reciting a prayer or whistling a song is as guilty of violating the Act as the individual who launches into a dissertation on the evils of hunting and the sanctity of the rights of animals, provided that both individuals' intent was to interfere with or obstruct the hunters' lawful taking of wildlife. The dispositive element, then, is the intent of the violator, not the message articulated thereby, Consequently, the Act is content-neutral.
The next step is to determine whether the Act constitutes a reasonable restriction of the time, place, and manner of expression narrowly tailored to serve a significant government interest, while leaving open ample alternative channels of communication. See e.g., Perry Education Assn. v. Perry Local Educators' Assn., 460 U.S. 37, 45, 103 S.Ct. CT Page 8120 948, 74 L.Ed.2d 794, 804 (1983); United States Postal Service v. Council of Greenburgh, 453 U.S. 114, 132,11 S.Ct. 2676, 69 L.Ed.2d 517 (1981). See also Cantwell v. Connecticut, 319 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213
(1940).
The Dorman court, in considering the state's right to regulate activities such as hunting, stated that:
 The state has a legitimate and substantial interest in managing and regulating the public lands designated for the preservation, enjoyment or taking of wildlife; the wildlife itself; and the activities of persons on those lands, including hunters. So long as the legislature elects to permit hunters to pursue their activity on property, during times, and under circumstances set aside for that purpose, it also may regulate the conduct of nonhunters in those contexts. Considerations of safety, alone, would justify such regulation, even it if (sic) impinges incidentally upon protected speech. On the other hand, the propriety of hunting and taking wildlife is a fair subject for spirited public debate. Once the hunter is outside the scope of his `lawful hunt' he is no different from any other unreceptive listener who must `in vindication of our liberties,' be `exposed to the onslaught of repugnant ideas'. . . . (Citations omitted.)
Dorman, 678 F. Supp. at 383.
Thus, as the Dorman court noted, "[t]he state is well within its power in protecting the legitimate rights of lawful hunters from harassing conduct, and `such conduct might constitutionally be punished under a properly tailored statute.'" Id., 396, quoting Houston v. Hill, supra, ___, 107 S.Ct. at ___, 96 L.Ed.2d at 412 n. 11 (1987). Furthermore, this court is of the opinion that the State has a more substantial and legitimate interest in maintaining the forest as a last resort of nature in a very populated region of this country. The State has assumed, as an important interest, the protection of the air, ground, and, water from the assault of humankind. The limitation of conduct within forests and park land is viewed as a necessary prerequisite to maintaining the fragile balance with which we have all interfered. Consequently, the final question for this court is whether the Act is narrowly tailored as to time, place and manner so as to be constitutional. CT Page 8121
VAGUENESS
A vagueness attack may take two forms: (1) The accused may argue that the statute is void for vagueness by virtue of its application to the particular facts at issue. This is a "vague as applied" challenge. Proto, supra, 696; State v. Pickering, 180 Conn. 54, 57, 428 A.2d 322 (1980). As was noted, supra, this court declines to consider the defendants' argument on this issue because of their failure to brief the same. The second type of vagueness challenge, and the challenge which will be considered here, is a claim that a portion of a statute is so vague as to implicatefirst amendment rights and consequently has a "chilling effect" on the remainder of the statute. In such a claim, the statute's constitutionality is tested for vagueness on its face ("facial constitutionality"). Proto, supra, 697. Indeed, in a facial challenge, the defendant may contest the validity of the entire statute even though his own conduct may clearly fail within only one of the statute's proscriptions. See, e.g., Aptheker v. Secretary of State,378 U.S. 500, 516, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964).
As the Leary court noted:
 Whenever a portion of a statute appears to be void for vagueness on its face, thereby threatening to produce a chilling effect on the remainder of the statute which might otherwise be valid, Connecticut courts, like the federal courts, have, whenever possible, applied a `judicial gloss' to the statute to save it from fatal infection and inevitable invalidation.
Leary, supra, 529. See also Shriver, supra, 464. Such judicial gloss may be gleaned from "recognized methods of statutory construction including references to judicial opinions involving the same or similar statutes of other jurisdictions, the common law, legal dictionaries or treatises that may be necessary to ascertain a statute's meaning." Leary, supra, 529. See also Proto, supra, 529; State v. Eason, 192 Conn. 37, 46, 470 A.2d 688 (1984). Furthermore, judicial gloss may be applied liberally to the statute in its entirety. See, e.g., State v. Cavallo,200 Conn. 664, 667, 513 A.2d 646 (1986).
In reading the statute at issue here, it is apparent that the accused must intend to obstruct or interfere with the lawful taking of wildlife. General Statutes Section 53a-183a(a). "Each of the words that the legislature chose to include in the statute clearly connotes CT Page 8122 the volitional component to accomplish a specific result." Leary, supra, 530. As the Cavallo court stated, "[a]s long as intent is a necessary element of the crime under [section53a-183a]. . . the statute casts no chilling effect on [actions not intended to interfere with the activities of hunters]." Cavallo, supra, 672. See also State v. Hawkins,19 Conn. App. 609, 615, 563 A.2d 745, cert. denied, 212 Conn. 820,565 A.2d 541 (1989). "Thus, the requirement of intent that must be read into [section 53a-183a] preserves the statute from a constitutional demise under thefirst amendment." Leary, supra.
In the opinion of this court, the only "questionable" terms in the Act are "interfere," Section53a-183a(a) ("No person shall obstruct or interfere with . . ."), and "otherwise harasses," Section 53a-183a(b)(2), ("A person violates this statute when he intentionally or knowingly. . .(2) blocks, impedes or otherwise harasses another person. . ."). However, as was noted, supra, this court, through the concept of judicial gloss, is entitled to employ traditional methods of statutory construction in defining and narrowing the statute. Leary, supra, 529, Thus, to ascertain what is meant by "interfere" it is proper to examine the remaining words of the statute. In re John C., supra. Indeed:
 [W]here the legislature, out of a desire to assure that no artful semanticist will escape the burden of the statute, employs, indiscriminately, seriatim, a number of similar words some virtually identical, others differing slightly, the better practice would appear to be to let each help to define the other.
Turner v. LaBelle, 251 F. Sup. 443, 446 (D.Conn. 1966). See also Leary, supra, 532-33; State v. Wall, D.N. CR 5 92-90768, Memorandum of Decision Re: Defendant's Motion to Dismiss, p. 7 (July 1992, Curran, J.) Here, "interfere" is used in conjunction with obstruct. "Obstruct" has been defined as: "To block or fill . . . [t]o impede, retard or interfere with. . . ." The American heritage Dictionary (2d College Ed.), 859. (Emphasis added.) "Interfere" has been defined as: "To come between so as to be a hindrance or obstacle; impede. . . ." The American Heritage Dictionary (2d College Ed.), 669. Thus, "interfere" should be read to coincide with "obstruct" and, therefore, the two words essentially define one another. Leary, supra, 532-33; Wall, supra.
To determine the meaning of "otherwise harasses" as that term is used in the Act, this court finds Public Act CT Page 8123 90-322 helpful. In that Act, the legislature replaced the word "harass" with "obstruct," in subsection (a). Public Act 90-322. Consequently, this court can infer that the legislature intended "harass" to be consistent, if not completely synonymous, with "obstruct," the definition of which has been articulated, supra. Additionally, in accordance with the rule stated in Turner, Leary, and Wall, supra, this court can, and does, interpret "otherwise harasses" in the context of "blocks" and "impedes." "Blocks" has been defined as "To stop or impede the passage of or movement through; hinder or obstruct. . . ." The American Heritage Dictionary (2d College Ed.), 188. "Impede" is defined as: "To regard or obstruct the progress of; block." The American Heritage Dictionary (2d College Ed.), 645. Thus, as was noted, supra, "otherwise harasses," "blocks" and "impedes" each serve to help define one another. Wall, supra; Leary, supra.
OVERBREADTH
The essence of an overbreadth challenge is that:
 [A] statute that proscribes certain conduct, even though it may have some permissible applications, sweeps within its proscription conduct protected by the first amendment. . . .Overbroad statutes, like vague ones, inhibit the exercise of constitutionally protected conduct. (Citations omitted).
Proto, supra, 707. Thus, a statute is void for overbreadth:
 [W]here it purports to reach protected as well as unprotected conduct and therefore must be struck down on its face and held to be incapable of any constitutional application. Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830
(1973). As Justice White characterized it in Broadrick, the overbreadth doctrine is `strong medicine' and therefore should be sparingly applied and only as a last resort.
Leary, supra, 534, quoting Broadrick, supra, 613.
"[P]articularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real but substantial as well, judged in relation to the statute's plainly legitimate sweep. " Broadrick, 413 U.S. at 615, 93 S.Ct. at 2918,37 L.Ed.2d at 842. Consequently, the overbreadth doctrine has not been CT Page 8124 invoked when a limiting construction has been or could be placed on the challenged statute. Leary, supra, 534; Wall, supra, 5; Proto, supra, 707-09. "`Equally important, overbreadth claims, if entertained at all have been curtailed when invoked against ordinary criminal laws that are sought to be applied to protected conduct.'" Leary, supra, quoting Broadrick, 413 U.S. at 613, 93 S.Ct. at ___,37 L.Ed.2d at 841.
As was noted, supra, an overbreadth analysis is similar to a vagueness analysis. While the court will, as was discussed, supra, attempt to apply judicial gloss to correct a vagueness defect, a slightly different technique is employed with regard to an overbreadth challenge. Proto, supra, 709-710. This concept is termed a "narrowing construction" of the statute. Leary, supra. See also, Broadrick, supra; Proto, supra, 707-09.
In applying the concept of "narrowing construction," this court will now consider several terms employed in the Act. In subsection (a), the Act states that "[n]o person shall obstruct or interfere with the lawful taking of wildlife by another person at the location where the activity is taking place. . . ." General Statutes Section 53a-183a. The Act then states, in subsection (c), that, for the purpose of this statute, "taking" shall be defined as in General Statutes 26-1. Section 26-1(18) defines taking as, inter alia, "any act of assistance to any other person in taking or attempting to take such wildlife. . . ." In applying a "narrowing construction" to the Act, this court finds that "taking" is limited to acts in preparation for, or acts of assistance to any person preparing for, the lawful taking of wildlife, at the location at which such lawful taking shall occur. Put another way, Section 53a-183a is limited to the site of the lawful taking, namely, the actual forest or "taking area" itself. Thus, people wishing to dissuade individuals from lawfully engaging in the taking of wildlife shall do so in areas such as state park parking lots; on streets entering and exiting the park; at ammunition stores, etc. However, such obstructions and interference are prohibited within the "hunting area" itself, i.e., the forest, woods, fields, etc. on which the state has provided for the taking of wildlife. Consequently, those opposed to such taking have the ability and the means by which to make known their beliefs, as long as they do not infringe upon the rights of those who desire to partake in the lawful hunting. As was noted, supra, such "infringement" begins at the point at which the hunters leave the designated parking areas to engage in their lawful pursuit of game. CT Page 8125
The defendants also challenge Section53a-183a(b)(3), which prohibits the use of natural or artificial visual, aural, olfactory or physical stimuli to affect wildlife behavior in order to hinder or prevent the lawful taking of wildlife. That subsection unquestionably proscribes such conduct during times designated by the state as "hunting seasons." During these seasons, such conduct is prohibited, and the site upon which such conduct is prohibited is the same as that discussed, supra, with regard to subsection (c). However, in accordance with the remainder of the Act, conduct prohibited by subsection (b)(3), when done with the intent to obstruct the lawful taking of wildlife, is properly proscribed at any time within the actual hunting area as such was defined with regard to General Statutes Section 26-1 and Section 53a-183a(c), discussed, supra. Such a finding is justified by the state's interest in regulating and managing public land designated for the preservation, enjoyment or taking of wildlife. Dorman, 678 F. Sup. 383.
General Statutes Section 53a-183a(b)(4) prohibits the erection of barriers with the intent to deny ingress or egress to areas where the lawful taking of wildlife may occur. This prohibition, contrary to the defendants' contentions, is neither overbroad nor vague. Moreover, the erection of barriers is the product of physical conduct, not spoken words. Therefore, the First Amendment is not implicated here, and the defendants' claim as to this issue must fail.
The defendants contend that subsection (b)(5), which prohibits interjecting one's self into the line of fire, is vague and overbroad. However, when construed in light of Section 53a-183a(a), such conduct is activity which obstructs the lawful taking of wildlife. As such, it is clearly defined and properly prohibited.
Section 53a-183a(b)(6) prohibits any activity which affects the condition or placement of personal or public property intended for use in the lawful taking of wildlife in order to impair its usefulness or prevent its use. As is the case with Section 53a-183a(b)(5), supra, such conduct clearly runs afoul of subsection (a) in that it obstructs the lawful taking of wildlife. Therefore, such conduct, done with the requisite intent, is prohibited at all times. Subsection (b)(7), which prohibits a person from entering or remaining upon private lands without the permission of the owner or his agent with the intent to violate the Act is a proper proscription within the context of Section 53a-183a(a). That separate criminal trespassing statutes, see, e.g., General CT Page 8126 Statutes Section 53a-109, also prohibit such conduct is of no relevance here.
In accordance with the foregoing, the defendants have failed to demonstrate beyond a reasonable doubt that the Act is unconstitutional. The application of both judicial gloss and the concept of narrowing construction delivers General Statutes Section 53a-183a from the fatal sweep of facial vagueness and overbreadth. Consequently, the Hunter Harassment Act is constitutional and, accordingly, the defendants' motions to dismiss are hereby denied.
DRANGINIS, J.